IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN CANCINO, et al.,                    :

        Plaintiffs,                    :
                                      Case No. 3:04cv274

        vs.                    :
                               JUDGE WALTER HERBERT RICE

YAMAHA MOTOR CORP., U.S.A.,                    :

        Defendant.                    :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT'S MOTION TO DISMISS (DOC. #41); PLAINTIFFS
DIRECTED TO FILE SECOND AMENDED COMPLAINT WITHIN 20
DAYS FROM DATE; DECISION AND ENTRY OVERRULING
PLAINTIFFS' MOTION FOR DISCOVERY REGARDING CLASS
CERTIFICATION (DOC. #50); CONFERENCE CALL SET

---

This putative class action arises out of a recall notice Defendant Yamaha

Motor Corporation, U.S.A. ("Defendant" or "Yamaha"), sent to purchasers of

certain motorcycles it had manufactured.  Plaintiffs allege that Defendant indicated

therein that those motorcycles were seriously defective and that they could not be

operated without risk of serious injury or death.  Plaintiffs brought this action in the

Montgomery County Common Pleas Court, from whence the Defendant has

removed it.  In their Amended Complaint,[1] Plaintiffs set forth twelve claims for

---

[1]A copy of that pleading is attached to Defendant's Notice of Removal (Doc. #1).

relief under the law of Ohio, including claims under the Ohio Consumer Sales Practices Act ("OCSPA"), § 1345.01, et seq., of the Ohio Revised Code, and the Ohio Deceptive Trade Practices Act ("ODTPA"), § 4165.01, et seq., of the Ohio Revised Code.  In its Notice of Removal (Doc. #1), Defendant alleged that this Court can exercise subject matter jurisdiction over this matter, on the basis of diversity of citizenship.  See 28 U.S.C. § 1441 (providing that, subject to exceptions which are not relevant, a District Court has removal jurisdiction over cases for which it would have had original jurisdiction); 28 U.S.C. § 1332(a) (providing that a District Court has original jurisdiction over a lawsuit between citizens of different states when the amount-in-controversy, exclusive of interest and costs, exceeds $75,000).

Plaintiffs filed a Motion to Remand (Doc. #19), arguing that this Court was without subject matter jurisdiction over this litigation, given that the requisite amount-in-controversy had not been met.[2]  The Defendant, in contrast, argued that it met the requisite jurisdictional minimum, because Plaintiffs had alleged in their initial Complaint that each class member had suffered at least $25,000 in compensatory damages on their claims under the OCSPA and the ODTPA, and, further, given that the Plaintiffs were attempting to recover treble damages on those claims.  It bears emphasis that the Defendant did not contend that the requisite amount-in-controversy was otherwise met.  In its Decision of September 26, 2005 (Doc. #39), this Court accepted Defendant's argument concerning the requisite jurisdictional minimum and overruled the Plaintiffs' Motion to Remand (Doc. #19).  As a consequence, Plaintiffs' statutory claims under the OCSPA and

_____

[2]Plaintiffs did not question that diversity of citizenship exists between the parties.

the ODTPA were the only ones over which this Court could exercise original jurisdiction; however, the supplemental jurisdiction statute, 28 U.S.C. § 1367, as interpreted by Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005), permits the exercise of supplemental jurisdiction over additional claims and additional plaintiffs who fail to satisfy the minimum amount-in-controversy requirement, as long as at least one named plaintiff satisfies that requirement.[3]

In the three numbered paragraphs of their Amended Complaint, Plaintiffs set forth the basic factual underpinnings of this litigation:[4]

> 1. This is a class-action lawsuit, in which Plaintiffs seek recover compensatory, statutory[] and declaratory relief resultant from Yamaha's sale of defectively manufactured motorcycles to Plaintiffs. Yamaha issued a recall notice that advised Plaintiffs that operation of the defective motorcycles could result in serious injury or death.
> 2. Thus, while Yamaha represented to Plaintiffs at the time of sale that they were buying quality vehicles that would provide a safe and comfortable means of transportation, Yamaha actually sold Plaintiffs motorcycles that they admit are seriously defective and cannot be operated as they pose the risk of serious injury or death.
> 3. Although Yamaha has represented it will repair the defects, the invasive and substantial repair work will significantly compromise the value of the motorcycle. Further, Plaintiffs have incurred, inter alia: financing fees, insurance premiums, state motor-vehicle licensure fees, taxes, storage costs, diminution of value and loss of use on [sic] these defective motorcycles. Further still, Plaintiffs are saddled with motorcycles they cannot operate. Additionally, Yamaha has burdened Plaintiffs with the substantial costs of bringing the instant action to enforce their rights.

---

[3]The supplemental jurisdiction statute has not been interpreted as dispensing with the requirement of complete diversity.

[4]The word "Plaintiffs" is used throughout the Amended Complaint to connote both the named Plaintiffs and the members of the class they seek to represent. Except when it is quoting from that pleading, this Court uses that word to refer solely to the three named Plaintiffs in this litigation.

Plaintiffs' Amended Complaint at ¶¶ 1-3.  In that pleading, the Plaintiffs also allege that, at various times during or after 2001, they purchased 2001 XV16 Road Star, Midnight Star or Road Star Silverado motorcycles, or 2002 or 2003 XV16 Road Star, Road Star Limited Edition, Midnight Star or Road Star Silverado motorcycles from Defendant's authorized dealers.  Id. at ¶ 13.  The price of those motorcycles, including collateral charges such as taxes and document expenses, exceeded $10,000.  Id. at ¶ 14.  In consideration for the purchase of the motorcycles, the Defendant issued several written and implied warranties to the Plaintiffs.  Id. at ¶ 15.

On September 2, 2003, Defendant issued a worldwide recall notice for owners of certain 2001 XV16ASN and XV16ASNC Midnight Star motorcycles, which indicated that a defect relating to the safety of those motorcycles existed ("First Recall Notice").  Id. at ¶¶ 16-17.  The First Recall Notice identified the defect as existing in the transmission of the motorcycles and warned that the defect could cause the transmission to lock up, starting a chain of events (the rear wheel locking up also, with a resulting loss of control), which could cause an accident and injuries or death.  Id. at ¶ 18.

On January 9, 2004, Defendant issued a recall notice for owners of certain 2001 XV16 Road Star, Midnight Star or Road Star Silverado motorcycles, and 2002 and 2003 XV16 Road Star, Road Star Limited Edition, Midnight Star or Road Star Silverado motorcycles ("Second Recall Notice").  Id. at ¶ 21. As with the First Recall Notice, the Second Recall identified a defect in the transmission of the

recalled motorcycles, which could cause the transmission and rear wheel to lock up, with a resulting accident with injuries or death. Id. at ¶ 23.[5]

The Defendant proposed to repair the recalled motorcycles by replacing some transmission components with new ones and instructed the owners of those motorcycles not to ride them, until repair work it has proposed has been completed. Id. at ¶¶ 24-25. The repair work is invasive and extensive, essentially involving tearing down and replacing the transmissions of the recalled motorcycles. Id. at ¶ 28. That work is also dependent upon the availability of at least seven new components which must be installed on the recalled motorcycles. Id. at ¶ 29. However, the need for such parts has outstripped the ability of the Defendant to supply them. Id. at ¶¶ 31-32. As a consequence, the Plaintiffs and the members of the putative class have not been able to use the motorcycles they purchased from the Defendant, even though they continue to incur financing fees, insurance premiums, state licensure fees, taxes and storage costs, as well as the loss of the use of their motorcycles. Id. at ¶¶ 33-34.

As indicated, the Plaintiffs' Amended Complaint contains twelve claims under the law of Ohio, to wit: 1) breach of implied warranty of merchantability (First Claim for Relief); 2) Breach of Express Warranty (Second Claim for Relief); 3) breach of contract (Third Claim for Relief); 4) breach of express warranty by affirmation, promise of description (Fourth Claim for Relief); 5) a claim under the OCSPA (Fifth Claim for Relief); 6) a claim under the ODTPA (Sixth Claim for Relief);

---

[5]The Plaintiffs allege that the Second Recall Notice includes the motorcycles that were subject to the first such notice. The Plaintiffs and the class they seek to represent were affected by the Second Recall Notice, because that recall notice applied to the motorcycles they and the members of the putative class had purchased . Plaintiffs' Amended Complaint at ¶¶ 26-27.

7) unjust enrichment (Seventh Claim for Relief); 8) negligence (Eighth Claim for Relief); 9) fraud (Ninth Claim for Relief); 10) negligent misrepresentation (Tenth Claim for Relief); 11) a claim for declaratory relief (Eleventh Claim for Relief); 12) a claim for violations of Ohio's Lemon Law, §§ 1345.71, et seq. of the Ohio Revised Code (Twelfth Claim for Relief).[6]

This case is now before the Court on the Defendant's Motion to Dismiss (Doc. #41), filed in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. As a means of analysis, the Court will initially review the procedural standards it must apply, whenever it rules on a motion to dismiss for failure to state a claim upon which relief can be granted filed in accordance with Rule 12(b)(6). The Court will then address the parties' arguments concerning Plaintiffs' claims under the OCSPA and the ODTPA. If it concludes that those claims must be dismissed, the Court will turn to the question of whether it will continue to exercise supplemental jurisdiction over the Plaintiffs' remaining claims. See Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1255 (6th Cir. 1996) (holding that, after dismissal under Rule 12(b)(6) of claims over which a court can exercise original jurisdiction, there is a "strong presumption" against the continued exercise of supplemental jurisdiction over supplemental claims). If, however, the Court concludes that one or both of those two statutory claims survives the Defendant's motion, the Court will address the parties' arguments concerning the Plaintiffs' other ten claims.

---

[6]All of Plaintiffs' claims, except for their Twelfth Claim for Relief, have been pled on behalf of the entire putative class. Plaintiffs' Twelfth Claim for Relief has been brought on behalf of a sub-class. Although the Plaintiffs have not defined that sub-class, this Court assumes that it consists of individuals who have claims under Ohio's Lemon law.

In <u>Prater v. City of Burnside, Ky.</u>, 289 F.3d 417 (6th Cir. 2002), the Sixth

Circuit reiterated the fundamental principles which govern the ruling on a motion to

dismiss under Rule 12(b)(6):

> The district court's dismissal of a claim pursuant to Rule 12(b)(6) of
> the Federal Rules of Civil Procedure is also reviewed de novo.  <u>Jackson v.
> City of Columbus</u>, 194 F.3d 737, 745 (6th Cir. 1999), <u>overruled on other
> grounds by Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002).  When
> deciding whether to dismiss a claim under Rule 12(b)(6), "[t]he court must
> construe the complaint in a light most favorable to the plaintiff, and accept
> all of [the] factual allegations as true." Id. (citation omitted).

<u>Id</u>. at 424.  In <u>Swierkiewicz v. Sorema N.A.</u>, 532 U.S. 506 (2002), the Supreme

Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely

requires that a complaint contain "a short and plain statement of the claim showing

that the pleader is entitled to relief."  <u>Id</u>. at 212.  Therein, the Court explained

further:

> Such a statement must simply "give the defendant fair notice of what the
> plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>,
> 355 U.S. 41, 47 (1957).  This simplified notice pleading standard relies on
> liberal discovery rules and summary judgment motions to define disputed
> facts and issues and to dispose of unmeritorious claims.  See <u>id</u>., at 47-48;
> <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>,
> 507 U.S. 163, 168-169 (1993).  "The provisions for discovery are so
> flexible and the provisions for pretrial procedure and summary judgment so
> effective, that attempted surprise in federal practice is aborted very easily,
> synthetic issues detected, and the gravamen of the dispute brought frankly
> into the open for the inspection of the court."  5 C. Wright & A. Miller,
> <u>Federal Practice and Procedure</u> § 1202, p. 76 (2d ed. 1990).

<u>Id</u>. at 512-13.  In <u>Bell Atlantic Corp. v. Twombly</u>, — U.S. —, 127 S.Ct. 1955

(2007), the Supreme Court rejected the standard established in <u>Conley v. Gibson</u>,

355 U.S. 41, 45-46 (1957), that a claim should not be dismissed "unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  127 S.Ct. at 1969.  In <u>Association of</u>

<u>Cleveland Firefighters v. City of Cleveland, Ohio</u>, 502 F.3d 545 (6th Cir. 2007), the

Sixth Circuit explained the Supreme Court's holding in <u>Twombly</u>:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. <u>Bell Atl. Corp. v. Twombly</u>, — U.S. —, 127 S.Ct. 1955 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id</u>. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." <u>Id</u>. (internal citation and quotation marks omitted).

<u>Id</u> at 548. Two weeks after it had decided <u>Twombly</u>, however, the Supreme Court

explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. —, — (2007) (slip op., at 7-8) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

<u>Erickson v. Pardus</u>, — U.S. —, 127 S.Ct. 2197, 2200 (2007). <u>See also</u>, <u>Lindsay</u>

<u>v. Yates</u>, 498 F.3d 434, 440 n. 7 (6th Cir. 2007) (noting that, in <u>Erickson</u>, "the

Supreme Court reaffirmed that Rule 8(a) requires only a short and plain statement

of the claim showing that the pleader is entitled to relief") (internal quotation marks

and citation omitted). In <u>Association of Cleveland Firefighters</u>, the majority did not

cite or discuss <u>Erickson</u>, although that decision was cited and discussed in the

dissenting opinion.[7]

_____

[7]In an earlier decision, <u>Weisbarth v. Geauga Park Dist.</u>, 499 F.3d 538 (6th Cir. 2007), the Sixth Circuit noted "'uncertainty as to the intended scope of the Court's decision [in <u>Twombly</u>]' persists," while finding it unnecessary to alleviate that uncertainty. <u>Id</u>. at 541 (quoting <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d

Yamaha has raised a number of arguments in support of its motion. However, as indicated, this Court will initially address the Defendant's argument that it must dismiss the Plaintiffs' claims under the OCSPA and the ODTPA.  If it concludes that one or both of those claims remain viable, it will address the Defendant's other arguments in the order presented in its Motion to Dismiss (Doc. #41).

I.  Claims under the OCSPA and the ODTPA (respectively the Fifth and Sixth Claims for Relief in Plaintiff's Amended Complaint)

In each of those claims, the Plaintiffs allege that, while Yamaha claims that it does not have sufficient parts to make the necessary repairs on the recalled motorcycles, it continues to manufacture new motorcycles that contain those parts.  Plaintiffs' Amended Complaint at ¶¶ 124 and 138.[8]  The Defendant characterizes the allegations in ¶¶ 124 and 138 of Plaintiffs' Amended Complaint as asserting that it has violated those two Ohio statutes, "by making certain representations regarding the recall of its motorcycles."  Doc. #41 at 19.  The Defendant contends that such claims are barred by those statutes, which expressly exclude conduct that is required by, specifically permitted by or in compliance with federal law.  See Ohio Rev. Code §§ 1345.12(A) and 4165.04(A)(1).  Defendant

_____

Cir. 2007)) (brackets added by Sixth Circuit).  The decision in Weisbarth was not discussed by the panel of the Sixth Circuit in Association of Cleveland Firefighters.

[8]Paragraph 124 of Plaintiffs' Amended Complaint provides:
> 124.  Yamaha claims that it does not currently have a sufficient supply of the parts needed to make the repairs[;] however, Yamaha continues to manufacture new Yamaha vehicles that contain the very same parts necessary to repair the Recalled Motorcycles.

Paragraph 138 contains the identical allegation.

points out that the Plaintiffs have not alleged that it conducted the recall in a manner that is not required by, specifically permitted by or in compliance with federal law.

Since this argument is based upon a misinterpretation of the meaning of ¶¶ 124 and 138, this Court rejects same. The thrust of those two paragraphs is not that Yamaha violated the OCSPA and the ODTPA, "by making certain representations regarding the recall of its motorcycles," as the Defendant contends. Rather, it is fair to interpret the allegations set forth in those paragraphs, in connection with the other allegations in the Plaintiffs' Amended Complaint, as asserting that Yamaha has decided to use its available supply of the parts, which are necessary to perform needed repairs on the motorcycles owned by the Plaintiffs and the members of the class they seek to represent, to manufacture new motorcycles instead of performing the needed repairs on the recalled motorcycles.[9] Whether the allegations set forth in ¶¶ 124 and 138 otherwise constitute a violation of the OCSPA and/or the ODTPA is an issue which this Court does not now address, since the Defendant has not raised it.[10]

Next, Yamaha argues that this Court must dismiss the Plaintiffs' claim under the OCSPA, because that statute applies only to conduct occurring inside Ohio. In support of that argument, the Defendant relies upon Shorter v. Champion Home Builders Co., 776 F. Supp. 333 (N.D.Ohio 1991). That lawsuit arose out of the

---

[9]It bears emphasis that this Court is obligated to construe the Plaintiffs' Amended Complaint in the manner most favorable to them, when ruling on the Defendant's motion. Prater, 289 F.3d at 424.

[10]Parenthetically, Plaintiffs do not expressly allege in their Amended Complaint that either their Fifth or Sixth Claim for Relief is predicated upon the allegations set in ¶¶ 124 and 138. However, since the Defendant has so interpreted the Plaintiffs' Amended Complaint, the Court will do likewise.

plaintiffs' purchase of a mobile home. The plaintiffs purchased the mobile home, which had been manufactured in Michigan, in Pennsylvania. In addition, the mobile home contained allegedly harmful particle board that had been manufactured in Oregon. The plaintiffs claimed, inter alia, that the defendants were liable under the OCSPA. The District Court interpreted the portion of Ohio Rev. Code § 1345.04, providing that the Ohio Courts of Common Pleas and Municipal Courts shall have jurisdiction, within their respective monetary jurisdiction, "over any supplier with respect to any act or practice in this state covered by [the OCSPA]," as meaning that the OCSPA "is only applicable if the offending conduct took place within the territorial boarders of the state of Ohio." Id. at 339. Therein, the court concluded that the defendant was entitled to summary judgment on plaintiffs' claim under the OCSPA, because all transactions relating to the manufacture and sale of the mobile home occurred outside of Ohio. Other courts have followed the decision in Shorter. For instance, in Chesnut v. Progressive Cas. Ins. Co., 166 Ohio App.3d 299, 305, 850 N.E.2d 751, 756 (2006), the court, inter alia, affirmed the grant of summary judgment in favor of the defendant, an Ohio insurance company, on the claim of the plaintiff, a citizen of Louisiana, under the OCSPA. The defendant had insured a vehicle which was damaged in a fire and declared the vehicle a total loss, after which it sold the vehicle to Ray's Auto Sales ("Ray's") in Youngsville, Louisiana. Even though it had declared the vehicle to be a total loss, the defendant gave Ray's a clean title, rather than a salvage title. Plaintiff purchased the vehicle from Ray's. In his lawsuit, plaintiff alleged that defendant had violated the OCSPA, by transgressing the Louisiana vehicle titling statute as a result of failing to obtain a salvage title for the Saturn after it had been declared a total loss. The Cuyahoga County Court of Appeals concluded that the OCSPA was inapplicable,

since the allegedly deceptive titling had occurred in Louisiana. <u>See</u> <u>also</u>, <u>Detrick v.</u> <u>84 Lumber Co.</u>, 2007 WL 1467070 at *5 (N.D.Ohio 2007) (relying upon <u>Shorter</u> for the proposition that the OCSPA applies to the plaintiffs' purchase of lumber from the defendant in Ohio, even though the lumber would ultimately be used in Pennsylvania).

According to the Defendant, the Plaintiffs have not alleged that the conduct underlying this claim occurred in Ohio. In support of that assertion, the Defendant cites ¶¶ 43-55 of Plaintiffs Amended Complaint, which contain the allegations that the claims of the named Plaintiffs are typical of those of the members of the class they seek to represent. Although two of the named Plaintiffs allege that they are residents of Montgomery County (<u>see</u> Plaintiffs' Amended Complaint at ¶¶ 47 and 55), while the third contends that he resides in Greene County (<u>id</u>. at ¶ 51), and they contend that many of the members of the proposed class purchased their motorcycles in Montgomery County (<u>id</u>. at ¶ 5), no named Plaintiff alleges that he purchased his motorcycle within Ohio. Given that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" (<u>Twombly</u>, 127 S.Ct. at 1964-65), this Court will require that the Plaintiffs file a second amended complaint, within 20 days from date, expressly alleging that one or more or all of the named Plaintiffs purchased his motorcycle in Ohio, if in fact such an allegation would be factually accurate.[11] In the absence of such an

---

[11]In their Memorandum in Opposition to Defendant's Motion to Dismiss, the Plaintiffs do not argue that they purchased their motorcycles in Ohio, nor do they contend that any other aspect of their transactions with the Defendant occurred inside Ohio. <u>See</u> Doc. #46 at 12. Rather, Plaintiffs merely point out that the <u>Shorter</u> court was ruling on a motion for summary judgment, after discovery which has not occurred in this litigation, rather than on a motion seeking dismissal. However, it is inconceivable that Plaintiffs need to conduct discovery in order to determine whether they purchased their motorcycles in Ohio.

amended pleading, this Court will dismiss the Plaintiffs' claim under the OCSPA, with prejudice.

In addition, the Defendant argues that this Court must dismiss Plaintiffs' claim under the OCSPA, because they have failed to allege sufficient facts to support a claim under that statute. Notably, the Defendant characterizes the Plaintiffs' claim under the OCSPA differently, in making this argument, than it did when it sought to dismiss both this claim and Plaintiffs' claim under the ODTPA, on the basis of the allegations set forth in ¶¶ 124 and 138 of their Amended Complaint, alone. See, supra, at 9-10  In support of this branch of its Motion to Dismiss (Doc. #41), Yamaha ignores ¶ 124, focusing instead on the allegations set forth in ¶¶ 93 and 125-27. In ¶ 93 of their Amended Complaint, Plaintiffs allege that Yamaha warranted that its motorcycles were free from defects in material and workmanship for a period of one year. In ¶¶ 125-27 of their Amended Complaint, Plaintiffs allege that the Defendant engaged in a deceptive and unfair trade practice, in violation of the OCSPA, by representing that its motorcycles were free from defects, when, in fact, they had defects of such magnitude that to use them in their intended manner would pose potentially life threatening risks. The Defendant contends that these allegations are not sufficient to state a claim under the OCSPA, because the Plaintiffs have admitted that their motorcycles "'functioned properly' [and] did not manifest any actual defect" and, further, given that it did not represent that its motorcycles were free from defects. See Doc. #41 at 20. Neither of those arguments causes this Court to conclude that the Plaintiffs' claim under the OCSPA must be dismissed.

The Defendant cites ¶¶ 13 through 36 of Plaintiffs' Amended Complaint to support its assertion that Plaintiffs have admitted that their motorcycles

"'functioned properly' [and] did not manifest any actual defect" (see Doc. #41 at 20). However, a review of the allegations set forth in those paragraphs of that pleading does not support the Defendant's assertion in that regard. On the contrary, those paragraphs, which the Court has discussed above, contain allegations that the motorcycles purchased by the Plaintiffs are defective because of the problems with their transmissions.

The Defendant supports its contention that it did not represent that its motorcycles were free from defects by pointing to a provision in the warranty, that it provided to purchasers of its motorcycles, to the effect that, during the period of the warranty, "any authorized Yamaha motorcycle dealer will, free of charge, repair or replace any part adjudged defective by Yamaha due to faulty workmanship or material from the factory." See Doc. #41 at Ex. 8.[12] Two paragraphs above, the introductory paragraph of the warranty states that Yamaha "hereby warrants each new model motorcycle will be free from defects in material and workmanship for the period of time stated herein, subject to certain limitations." Id. While the first quoted portion of the warranty may limit a motorcycle owner's remedies for breach of warranty, there is not therein an express disclaimer of the warranty set forth in the introductory paragraph.

_____

[12]This Court agrees with the Defendant that it may consider the warranty, without transforming the Motion to Dismiss into one seeking summary judgment, since Plaintiffs have referred to and quoted from a Yamaha warranty throughout their Amended Complaint. See City of Monroe Employees Retirement System v. Bridgestone Corp., 399 F.3d 651, 659 n. 6 (6th Cir. 2005). However, Yamaha has failed to present evidence that the warranty it has furnished, Exhibit 8 to its motion, is an accurate copy of the warranties it provided to each of the Plaintiffs. Although the Plaintiffs have not challenged the accuracy of Exhibit 8, this Court directs the Defendant to file an affidavit or declaration, within 10 days from date, demonstrating that the exhibit is an accurate copy of the warranties it provided to each of the Plaintiffs.

- **14** -

Defendant also argues that this Court must dismiss Plaintiffs' claim under the OCSPA, because they base this claim on the mere assertion that it failed to warn them about defects. In support of that assertion, Defendant relies upon Radford v. Daimler Chrysler Corp., 168 F. Supp.2d 751 (N.D.Ohio 2001), wherein the court sustained the defendant's motion to dismiss the plaintiff's claim under the OCSPA, because it was merely based on the premise that the defendant had failed to disclose that the automobile she had purchased had a defective instrument panel. Id. at 754. In support of that conclusion, the Radford court relied upon the decision of the Montgomery County Court of Appeals in Bierlein v. Bernie's Motor Sales, Inc., 1989 Ohio App. Lexis 7181 (Ohio App. 1986). Therein, the plaintiff purchased a used automobile form the defendant, which had been sold "as is," i.e., without a warranty. After that vehicle began to experience mechanical problems, the plaintiff initiated that litigation, alleging, inter alia, that the defendant had violated the OCSPA by failing disclose the defects in the automobile. Herein, in contrast, the Plaintiffs contend that Yamaha violated the OCSPA by selling motorcycles with defective transmissions, after warranting that the motorcycles were free from defects. Since this lawsuit has the additional allegation that the Defendant warranted that its motorcycles were free from defects, this Court concludes that, unlike Radford and Bierlein, Plaintiffs do not base their claim under the OCSPA merely upon the assertion that the OCSPA was violated as a result of the Defendant's failure to disclose the defects in the motorcycles.

In addition, the Defendant contends that the Plaintiffs' claim under the ODTPA must be dismissed, because that statute governs conduct between commercial entities, rather than a commercial entity and a consumer. In support of that proposition, Defendant relies upon Glassner v. R.J. Reynolds Tobacco Co.,

1999 U.S. Dist. Lexis 22637 (N.D.Ohio 1999), affirmed on other grounds, 223 F.3d 343 (6th Cir. 2000), and Chamberlain v. American Tobacco Co., 1999 U.S. Dist. Lexis 22636 (N.D. Ohio 1999). In Glassner, the District Court dismissed the plaintiff's claim under the ODTPA, because that statute applied only to commercial entities.[13] The District Court based that conclusion on the fact that the reported cases brought under that statute involved disputes between commercial entities. That court did not cite to or discuss the language of the statute. The Chamberlain court merely followed the conclusion reached by the District Court in Glassner. In Bower v. IBM Corp., 495 F. Supp.2d 837 (S.D.Ohio 2004), this Court analyzed the language of the OCSPA, reached the opposite conclusion from that reached in Glassner and Chamberlain, and held that a consumer can bring an action under the ODTPA.[14] No intervening authority has caused this Court to question its conclusion in Bower. Accordingly, this Court rejects the assertion that it must dismiss the Plaintiffs' claim under the ODTPA, because that statute applies only to disputes between commercial entities.

Defendant also contends that this Court must dismiss the Plaintiffs' claim under the ODTPA, because Plaintiffs' allegation that it engaged in a deceptive trade practice, by representing that its motorcycles were free from defects, is belied by other provisions of its warranty. For the same reasons that this Court has rejected this contention as a basis for dismissing Plaintiffs' claim under the OCSPA, it rejects same as it relates to their claim under the ODTPA.

---

[13]On appeal, the Sixth Circuit did not address the plaintiff's claim under the ODTPA.

[14]Although this Court decided Bower in 2004, before the Defendant filed its Motion to Dismiss (Doc. #41) herein, Defendant's failure to cite that decision in its papers is of no concern, since that decision has only recently been published.

Finally, Defendant argues that this Court must dismiss Plaintiffs' claim under the ODTPA, because the Plaintiffs have failed to allege an injury which is cognizable under that statute. In support thereof, Defendant points to § 4165.03(A)(2), which provides that "[a] person who is injured by a person who commits a deceptive trade practice that is listed in division (A) of section 4165.02 of the Revised Code may commence a civil action to recover actual damages from the person who commits the deceptive trade practice." Herein, the Plaintiffs have alleged that they suffered a number of types of damages as a result of the Defendant's alleged deceptive trade practice, all of which flow from the fact that their motorcycles cannot be used as a result of their defective condition. See Plaintiff's Amended Complaint at ¶ 141. Since the Defendant has not cited any authority in support of the proposition that such allegations do not constitute an injury under the ODTPA,[15] this Court rejects the assertion that it must dismiss this claim as a result of the Plaintiffs' failure to allege that they have suffered an injury.

Based upon the foregoing, this Court overrules the Defendant's Motion to Dismiss (Doc. #41), as it relates to Plaintiffs' claims under the OCSPA and the ODTPA, the Fifth and Sixth Claims for Relief in their Amended Complaint. Accordingly, the Court turns to the Defendant's arguments in support of its request that it dismiss the Plaintiffs' other ten claims.


II. Lack of Injury

The Defendant contends that the Plaintiffs' claims must be dismissed, given that they have not suffered a cognizable injury, since the defect in the

_____

[15]That statute does not define the term "injury."

transmissions did not cause their motorcycles to malfunction.[16]  According to the Defendant, a claim involving a latent defect in a product accrues when the latent defect manifests itself into actual injury.  In support of that premise, the Defendant has quoted from and cited Braxton v. Peerless Premier Appliance Co., 2003 Ohio App. Lexis 2596 (Ohio App. 2003).  Therein, the plaintiff brought a products liability action against the manufacturer, distributor and seller of his gas range, more than two years after it had exploded causing him to suffer an injury.  The trial court entered summary judgment against the plaintiff, concluding that the claim was barred by the applicable statute of limitations.  In affirming on appeal, the Cuyahoga County Court of Appeals rejected the plaintiff's contention that an application of the discovery rule prevented his claim from being barred by the applicable statute of limitations, because his injury manifested itself immediately upon the explosion of the gas range.  In support of its conclusion that the discovery rule was not applicable, the Braxton court wrote:

> In this regard, Braxton's reliance on St. Paul Fire & Marine Ins. Co. v. R.V. World, Inc. (1989), 62 Ohio App.3d 535, 577 N.E.2d 72, supports the opposite of his argument.  There, the [Ninth] District Court of Appeals held that a claim for a latent defect/property damage accrues when:
> "1. the latent defect manifests itself into actual damage;

---

[16]In a declaratory sentence in its motion, Defendant states, without citation to the Plaintiffs' Amended Complaint or evidentiary support, that "the potential defect in the vehicle transmission systems has been corrected free of charge by Yamaha to ensure that the vehicles continue to perform properly."  Doc. #41 at 5.  The Defendant has decided to challenge the Plaintiffs' Amended Complaint with a motion filed in accordance Rule 12(b)(6), rather than waiting for the completion of discovery and seeking summary judgment, which means that the Court cannot consider matters beyond the pleadings.  However, even if the Defendant had challenged the Plaintiffs' claims with a motion for summary judgment, this Court would not consider the statement of counsel, which lacks evidentiary support.  Therefore, this Court will not consider the quoted statement when ruling on the Defendant's motion.

"2. the injured party was aware or should have been aware that the damage was related to the acts of the manufacturer or seller; and
"3. the damage put a reasonable person on notice of need for further inquiry as to the cause of the damage."  Id. at 543, 577 N.E.2d 72.

Id. at *7.  Since the court appeals in Braxton was deciding when a claim accrued for purposes of the running of the statute of limitations, an issue which the Defendant has not raised herein, this Court cannot conclude that it must dismiss the Plaintiffs' Amended Complaint on the basis of that decision.  It bears emphasis that, in Braxton, the court did not remotely address the question of whether a plaintiff suffers a cognizable injury as a result of a defect in a product which, although it does not cause the product to malfunction, prevents the plaintiff from using the product.[17]

Defendant has also cited decisions such as Briehl v. General Motors Corp., 172 F.3d 623 (8th Cir. 1999), in support its contention that the Plaintiffs have not suffered a cognizable injury.  In Briehl, the plaintiffs, seeking to represent a nationwide class of purchasers of vehicles manufactured by General Motors ("GM"), contended that the anti-lock braking systems ("ABS brakes") on those vehicles were defective.  The plaintiffs brought that litigation against GM and the manufacturer of the brakes, setting forth claims of fraud, breach of express and implied warranties and violation of state consumer laws.  The District Court

---

[17]The Defendant has also cited St. Paul Fire & Marine Ins. Co. v. R.V. World, Inc., 62 Ohio App.3d 535, 577 N.E.2d 72 (1989), which was discussed by the Braxton court, and Vidensek v. Ford Motor Co., 1992 Ohio App. Lexis 6616 (Ohio App. 1992).  In those two cases, the courts concluded that the plaintiff's tort-based defect claims accrued and the statute of limitations began to run, when the damage occurred, instead of at some later date in accordance with the discovery rule, rather than addressing the question of whether a plaintiff suffers a cognizable injury as a result of a defect in a product which, although it does not cause the product to malfunction, prevents the plaintiff from using the product.

dismissed that lawsuit for failure to state a claim upon which relief could be
granted, concluding that the plaintiffs had failed to plead damages adequately,
since their allegation that their vehicles suffered from defects was not sufficient,
because the defects had not yet manifested themselves. The District Court, thus,
concluded that the defect in the plaintiffs' vehicles must manifest itself, before
they could recover from either GM or the manufacturer of the ABS brakes. On
appeal, the Eighth Circuit agreed, writing:

> Courts have been particularly vigilant in requiring allegations of injury
> or damages in products liability cases. Lee v. General Motors Corp., 950 F.
> Supp. 170, 171-74 (S.D.Miss. 1996) (dismissing plaintiffs claims of
> inherently defective detachable fiberglass roofs for failure to plead sufficient
> damages); Yost v. General Motors Corp., 651 F. Supp. 656, 657-58
> (D.N.J.1986) (holding that complaint alleging design defect "likely to cause"
> damage failed to state a claim); Feinstein v. Firestone Tire & Rubber Co.,
> 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (holding no cause of action for
> defect which never manifests itself); Pfizer v. Farsian, 682 So.2d 405, 407
> (Ala. 1996) (holding that a plaintiff's belief that a product could fail in the
> future is not, without more, a legal injury sufficient to support plaintiff's
> claim); Khan v. Shiley Inc., 217 Cal. App.3d 848, 857, 266 Cal. Rptr. 106
> (1990) (holding plaintiff with inherently defective heart valve failed to state a
> claim unless the valve malfunctioned); Zamora v. Shell Oil Co., 55 Cal.
> App.4th 204, 208, 63 Cal. Rptr.2d 762 (1997) (holding that, in the absence
> of a product malfunction, a plaintiff cannot establish that a defendant
> breached any duty owed); Verb v. Motorola, Inc., 284 Ill. App.3d 460, 220
> Ill. Dec. 275, 672 N.E.2d 1287, 1295 (1996) (dismissing claims against
> cellular telephone manufacturers alleging potential safety defects because
> "plaintiffs' future personal injury and damages claims constitute conjecture
> and speculation"). As one court has stated, "[l]iability does not exist in a
> vacuum; there must be a showing of some damage...." Feinstein, 535 F.
> Supp. at 602. "It is well established that purchasers of an allegedly
> defective product have no legally recognizable claim where the alleged
> defect has not manifested itself in the product they own." Weaver v.
> Chrysler Corp., 172 F.R.D. 96, 99 (S.D.N.Y.1997); see also Martin v. Ford
> Motor Co., 914 F. Supp. 1449, 1453 (S.D.Tex.1996) (stating that where
> plaintiffs admittedly have not sustained any personal injuries relating to the
> seat belt restraint system in a vehicle, plaintiffs cannot succeed on any of
> their claims); Yost, 651 F. Supp. at 657-58 ("The basic problem in this case

is that plaintiff Yost has not alleged that he has suffered any damages. He has not stated that the engine in his vehicle is defective in any way.").

In this case, the Plaintiffs have not alleged that their ABS brakes have malfunctioned or failed. In fact, the Plaintiffs affirmatively state that their purported class excludes any claim for personal injury or property damage caused by brake failure. The Plaintiffs' ABS brakes have functioned satisfactorily and at no time have the brakes exhibited a defect. Under each of the theories the Plaintiffs invoke in the Original Complaint, damages constitutes an essential element of the cause of action. Weaver, 172 F.R.D. at 99-100 (claims for breach of warranty, fraud, and violation of state consumer protection statute dismissed for failure to plead damages); Martin, 914 F. Supp. at 1455 (same); Carlson v. General Motors Corporation, 883 F.2d 287, 296 (4th Cir. 1989), cert. denied, 495 U.S. 910 (1990) (claim for breach of implied warranty of merchantability dismissed for failure to plead damages). Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies. Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the District Court was correct when it dismissed the Plaintiffs' Original Complaint.

Id. at 627-28 (footnote omitted). The Eighth Circuit also held that the plaintiffs' allegation of economic harm in the form of diminished value of the vehicles as a result of the defective ABS brakes was not sufficient to state a claim for damages, given that there was no allegation that any plaintiff had sold his vehicle at a reduced price. Id. at 628-29.

The distinguishing factor between this litigation and Briehl is that, herein, the Plaintiffs have adequately alleged that the defect in the transmissions of their motorcycles has manifested itself in the form of economic harm, if not personal injury or property damage. As part of the recall of Plaintiffs' motorcycles, the Defendant told the Plaintiffs and the members of the class they seek to represent not to use their motorcycles until they had been repaired, due to the possibility of potentially catastrophic consequences. Notably, there was no mention of a recall

and the concomitant inability to use the product in question in <u>Briehl</u>.[18]  Moreover,

in <u>Briehl</u>, the Eighth Circuit concluded that the plaintiffs had failed to plead

adequately their claim of economic harm in the form of diminished value of their

vehicles, rather than concluding that economic loss is not a cognizable injury.

Herein, as is indicated, the Plaintiffs have pled that they suffered an economic loss

in the form of the loss of the use of their vehicles.

    In addition, it should be noted that other courts have distinguished <u>Briehl</u> and

similar decisions for analogous reasons.  For instance, in <u>Lloyd v. General Motors

Corporation</u>, 397 Md. 108, 916 A.2d 257 (2007), the Maryland Court of Appeals

concluded that the plaintiffs had viable claims against domestic automakers,

alleging that vehicles had defective seatbacks which had a tendency to collapse in

rear-impact collisions.  The defendants moved to dismiss, arguing that the

_____

[18]A recall was mentioned in only two of the cases cited in the above-quoted
passage from <u>Briehl</u>, to wit: <u>Feinstein v. Firestone Tire & Rubber Co.</u>, 535 F. Supp.
595, 603 (S.D.N.Y. 1982) and <u>Khan v. Shiley Inc.</u>, 217 Cal. App.3d 848, 857,
266 Cal. Rptr. 106 (1990).  <u>Feinstein</u> is not particularly useful in ruling on the
Defendant's motion, since the court therein merely denied the plaintiffs' motion for
class certification, without dismissing any of their claims for any reason, including
whether plaintiffs had failed to allege that they suffered a cognizable injury.  In
<u>Kahn</u>, the plaintiff was the recipient of a defective, mechanical heart valve,
manufactured by the defendant.  The plaintiff alleged that she had suffered
emotional distress as a result of learning that the heart valve was defective.  She
did not contend that the valve had in any manner malfunctioned.  The California
appellate court held that the plaintiff did not have a valid products liability claim
under that state's law, because the uncontroverted evidence demonstrated that the
valve continued to operate as intended, despite its defective nature.  That decision
is distinguishable, given that, herein, the Plaintiffs have alleged that their
motorcycles have not continued to function as intended.
    Yamaha has also cited <u>Jarman v. United Industrial Corp.</u>, 98 F. Supp.2d 757
(S.D.Miss. 2000), and <u>Ziegelman v. Daimler Chrysler Corp.</u>, 649 N.W.2d 556 (N.D.
2002), in support of its proposition that Plaintiffs have not suffered a cognizable
injury, since the defect in the transmissions did not cause their motorcycles to
malfunction.  Like <u>Briehl</u>, neither of those decisions referred to a recall.

plaintiffs' claims were not viable, given that they had not suffered an injury as a result of the allegedly defective seatbacks. The <u>Lloyd</u> court rejected that assertion, because the plaintiffs had suffered economic losses as a result of the defective seatbacks. <u>See</u> <u>also</u>, <u>In re General Motors Piston Slap Litigation</u>, 343 F. Supp.2d 1340 (W.D.Okla. 2005).

Based upon the foregoing, the Court rejects the Defendant's contention that Plaintiffs' claims must be dismissed, because they have failed to allege that they have suffered a cognizable injury.


<u>III. Preemption</u>

The Defendant argues that the Court must dismiss the Plaintiffs' claims to the extent that they are predicated upon its handling (or mishandling) of the recall. According to the Defendant, these aspects of Plaintiffs' claims are barred by the doctrine of preemption. The Court will refer to these aspects of Plaintiffs' claims as the "allegedly preempted claims." In particular, the Defendant contends that such claims are preempted by the National Traffic and Motor Vehicle Safety Act of 1966 ("Safety Act"), 49 U.S.C. § 30101, <u>et</u> <u>seq</u>. In <u>Railroad Ventures, Inc. v. Surface Transportation Bd.</u>, 299 F.3d 523 (6th Cir. 2002), the Sixth Circuit reviewed the doctrine of preemption:

> Under the Supremacy Clause, U.S. Const. art. 6, cl. 2, federal law preempts state or local law in various ways: (1) express preemption where the intent of Congress to preempt state law is clear and explicit; (2) field preemption where Congress' regulation of a field is so pervasive or the federal interest is so dominant that an intent can be inferred for federal law to occupy the field exclusively; and (3) conflict preemption, where federal and state law so conflict that it is impossible for a party to comply with both simultaneously, or where enforcement of state law prevents the accomplishment of the full purposes and objectives of federal law. <u>See</u> <u>Cipollone v. Liggett Group, Inc.</u>,

505 U.S. 504, 516 (1992); Friberg v. Kansas City S. Ry. Co., 267 F.3d 439, 442 (5th Cir. 2001).

Id. at 561-62. Accord Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 540-41 (2001); Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 300 (1988). Of course, there is a general presumption "that Congress does not cavalierly pre-empt state-law causes of action." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

Herein, the Safety Act contains an express preemption provision, which provides in pertinent part:

> (b) Preemption.—(1) When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter....
> \*                    \*                    \*
> (d) Warranty obligations and additional legal rights and remedies.—Sections 30117(b), 30118-30121, 30166(f), and 30167(a) and (b) of this title do not establish or affect a warranty obligation under a law of the United States or a State. A remedy under those sections and sections 30161 and 30162 of this title is in addition to other rights and remedies under other laws of the United States or a State.
> (e) Common law liability.—Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

49 U.S.C. § 30103(b). The Defendant does not argue that the Plaintiffs are precluded from bringing their allegedly preempted claims by that provision. Indeed, such an argument would not have been fruitful. Geier v. American Honda Motor Co., 529 U.S. 861 (2000) (holding that the express preemption provision of the Safety Act does not preempt state tort claim predicated upon failure to provide an airbag).

In addition, Yamaha has not argued that the doctrine of field preemption prevents the Plaintiffs from maintaining the allegedly preempted claims. Once

again, such an argument would have been fruitless. See Harris v. Great Dane Trailers, Inc., 234 F.3d 398, 400 (8th Cir. 2000) (noting that "Congress in the Safety Act plainly did not intend to occupy the field of motor vehicle safety"). Accord Chamberlan v. Ford Motor Co., 314 F. Supp.2d 953, 960 (N.D.Cal. 2004); Richards v. Michelin Tire Corp., 786 F. Supp. 959, 963 (S.D.Ala. 1992).

Rather, Defendant focuses on conflict preemption. Conflict preemption "occurs 'when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" United States v. Locke, 529 U.S. 89, 109 (2000) (quoting California v. ARC America Corp., 490 U.S. 93, 100-101 (1989)). In support of its premise that the doctrine of conflict preemption prevents the Plaintiffs from maintaining the allegedly preempted claims, the Defendant points to certain portions of 49 U.S.C. § 30120, which provide:

(a) Ways to remedy.–(1) Subject to subsections (f) and (g) of this section, when notification of a defect or noncompliance is required under section 30118(b) or (c) of this title, the manufacturer of the defective or noncomplying motor vehicle or replacement equipment shall remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy. Subject to subsections (b) and (c) of this section, the manufacturer shall remedy the defect or noncompliance in any of the following ways the manufacturer chooses:
(A) if a vehicle--
(i) by repairing the vehicle;
(ii) by replacing the vehicle with an identical or reasonably equivalent vehicle; or
(iii) by refunding the purchase price, less a reasonable allowance for depreciation.
(B) if replacement equipment, by repairing the equipment or replacing the equipment with identical or reasonably equivalent equipment.
(2) The Secretary of Transportation may prescribe regulations to allow the manufacturer to impose conditions on the replacement of a motor vehicle or refund of its price.
\*                    \*                    \*

<u>(c) Adequacy of repairs.</u>–(1) If a manufacturer decides to repair a defective or noncomplying motor vehicle or replacement equipment and the repair is not done adequately within a reasonable time, the manufacturer shall--

    (A) replace the vehicle or equipment without charge with an identical or reasonably equivalent vehicle or equipment; or

    (B) for a vehicle, refund the purchase price, less a reasonable allowance for depreciation.

(2) Failure to repair a motor vehicle or replacement equipment adequately not later than 60 days after its presentation is prima facie evidence of failure to repair within a reasonable time.  However, the Secretary may extend, by order, the 60-day period if good cause for an extension is shown and the reason is published in the Federal Register before the period ends. Presentation of a vehicle or equipment for repair before the date specified by a manufacturer in a notice under section 30119(a)(5) or 30121(c)(2) of this title is not a presentation under this subsection.

(3) If the Secretary determines that a manufacturer's remedy program is not likely to be capable of completion within a reasonable time, the Secretary may require the manufacturer to accelerate the remedy program if the Secretary finds--

    (A) that there is a risk of serious injury or death if the remedy program is not accelerated; and

    (B) that acceleration of the remedy program can be reasonably achieved by expanding the sources of replacement parts, expanding the number of authorized repair facilities, or both.

The Secretary may prescribe regulations to carry out this paragraph.

The Defendant contends that the Safety Act preempts the aspects of Plaintiffs' claims arising out of the handling of the recall, because subsection 30120(a) affords it discretion in choosing the appropriate remedy for a defective vehicle and subsection 30120(c) affords it at least a 60-day period in which to perform the necessary repairs.  In addition, Yamaha points to 49 U.S.C. § 30119(a)(7), under which the National Highway Traffic Safety Administration ("NHTSA") may impose additional requirements on a manufacturer in order to ensure the adequacy and the reasonableness of a recall and 49 U.S.C. § 30118(e), under which a party dissatisfied with a manufacturer's notification can file a petition with the NHTSA.

This Court cannot agree with Defendant that the Safety Act preempts the aspect of the Plaintiffs' claims arising out of the handling of the recall.[19]  As an initial matter, it bears emphasis that § 30103(d) provides that "[a] remedy under [§§ 30118 through 30120] is in addition to other rights and remedies under other laws of the United States or a State."  Given that unambiguous statement of Congressional intent, this Court cannot conclude that permitting Plaintiffs' allegedly preempted claims to proceed would make "compliance with both state and federal law is impossible," or that state law would stand as "an obstacle to the accomplishment and execution of the full purposes and objective of Congress." Locke, 529 U.S. at 109 (internal quotation marks omitted).

In addition, although the Defendant has not cited a single decision in which a court has held that state law claims arising out of the handling of a recall are preempted by the Safety Act,[20] a District Court in the Sixth Circuit recently held

_____

[19]Defendant places primary reliance upon In re Bridgestone/Firestone, 153 F. Supp.2d 935 (S.D.Ind. 2001), a multi-district proceeding wherein the court concluded that the plaintiffs' state law claims, seeking a judicially ordered recall of the allegedly defective tires, was preempted by the Safety Act.  That decision is inapplicable, given that the Plaintiffs herein have not requested that this Court order a recall.

The Defendant has also cited Namovicz v. Cooper Tire & Rubber Co., 225 F. Supp.2d 583 (D.Md. 2001), and Carden v. Bridgestone/Firestone, Inc., 2000 U.S. Dist. Lexis 21367 (S.D.Fla. 2000).  In Namovicz, the court concluded that plaintiffs' state law claims were completely preempted by the Safety Act and that, therefore, it could exercise removal jurisdiction over that matter.  In Carden, the court reached the opposite conclusion.  Herein, the Defendant utilizes preemption as a defense to the Plaintiffs' claims, rather than contending that those claims are completely preempted and that, therefore, this Court can exercise removal jurisdiction over them.  Accordingly, this Court concludes that Namovicz and Carden are inapposite.

[20]Subsection 30120(b) is inapplicable, since it applies to recalling tires.  Similarly, subsections 30120(f) and (g), which, respectively, require manufacturers to compensate dealers fairly for recall work and exclude certain overaged vehicles from the requirement that the remedy be provided without charge, are also

that such claims are not preempted.  In re Ford Motor Co. Speed Control

Deactivation Switch Products Liability Litigation, 2007 WL 2421480 (E.D.Mich.

2007).  In re Ford is multi-district litigation arising out of the allegedly defective

speed control deactivation switches on Ford vehicles and the subsequent recall of

those vehicles to replace those switches.  The plaintiffs sought to recover damages

on behalf of two sub-classes, to wit: the incident sub-class, those whose vehicles

had experienced fires, allegedly as a result of the switches; and the non-incident

sub-class, those who had suffered economic damages as a result of for the

temporary loss of their cruise control and/or vehicles during the recall.  Ford moved

to dismiss the claims of the non-incident sub-class, arguing that their claims were

preempted by the Safety Act.  The District Court overruled that motion, concluding

that requiring Ford to pay damages for its failure to have sufficient replacement

parts would not interfere with the enforcement of the Safety Act or with the

responsibility of the NHTSA to supervise recalls.  Id. at *5.  The District Court also

noted that the plaintiffs' state law claims would not in any way prevent Ford from

complying with its obligations under the Safety Act.  Id.

Accordingly, this Court concludes that the aspects of the Plaintiffs' claims

arising out the handling of the recall are not preempted by the Safety Act.


IV.  Plaintiffs' Claim under the Ohio Lemon Law (Twelfth Claim for Relief in

Plaintiffs' Amended Complaint)

Yamaha argues that the Court must dismiss the Plaintiffs' claim under Ohio's

Lemon Law, §§ 1345.71, et seq. Ohio Revised Code, because they have failed to

_____

inapplicable.

allege that they purchased their motorcycles new, or that their claim arose during the first year of ownership of those motorcycles or in the first 18,000 miles of their use. Those two requirements for a claim under the Lemon Law are predicated upon § 1345.72(A), which provides:

> (A) If a <u>new motor vehicle</u> does not conform to any applicable express warranty and the consumer reports the nonconformity to the manufacturer, its agent, or its authorized dealer <u>during the period of one year following the date of original delivery or during the first eighteen thousand miles of operation, whichever is earlier</u>, the manufacturer, its agent, or its authorized dealer shall make any repairs as are necessary to conform the vehicle to such express warranty, notwithstanding the fact that the repairs are made after the expiration of the appropriate time period.

(Emphasis added). This Court concludes that Plaintiffs' Amended Complaint adequately alleges that two of the named Plaintiffs, Anthony Jewett and Kevin Hamilton, purchased new Yamaha motorcycles and attempted to have the dealer complete the repair work, necessitated by the recall, within a timely manner, as required by Ohio's Lemon Law.[21] <u>See</u> Plaintiffs' Amended Complaint at ¶¶ 68-78. Accordingly, the Court rejects the Defendant's assertion that it should dismiss the Twelfth Claim for Relief in Plaintiffs' Amended Complaint.


<u>V. Plaintiffs' Tort Claims (the Seventh through Tenth Claims for Relief in Plaintiffs' Amended Complaint)</u>

With those four claims, the Plaintiffs have set forth claims of unjust enrichment (Seventh Claim for Relief), negligence (Eighth Claim for Relief), fraud

---

[21]It bears emphasis that the claim under Ohio's Lemon Law has been brought on behalf of a sub-class, which this Court assumes is comprised of those who purchased new Yamaha motorcycles and attempted to have the dealer complete the repair work, necessitated by the recall, within a timely manner, as required by Ohio's Lemon Law.

(Ninth Claim for Relief) and negligent misrepresentation (Tenth Claim for Relief). The Defendant has presented a number of reasons why this Court should dismiss those claims, which this Court addresses in the order presented.

Defendant initially asserts that, in accordance with the economic-loss rule, the Court must dismiss these four claims, because Ohio law does not permit a plaintiff to recover in tort for purely economic losses. In Corporex Dev. & Constr. Mgt. v. Shook, Inc., 106 Ohio St.3d 412, 835 N.E.2d 701 (2005), the Ohio Supreme Court explained the economic-loss rule:

> The economic-loss rule generally prevents recovery in tort of damages for purely economic loss. See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co. (1989), 42 Ohio St.3d 40, 45, 537 N.E.2d 624; Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn. (1990), 54 Ohio St.3d 1, 3, 560 N.E.2d 206. "'[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" Chemtrol, 42 Ohio St.3d at 44, 537 N.E.2d 624, quoting Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp. (Iowa 1984), 345 N.W.2d 124, 126. See, also, Floor Craft, 54 Ohio St.3d at 3, 560 N.E.2d 206. This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that "parties to a commercial transaction should remain free to govern their own affairs." Chemtrol, 42 Ohio St.3d at 42, 537 N.E.2d 624. See, also, Floor Craft, 54 Ohio St.3d at 7, 560 N.E.2d 206, quoting Sensenbrenner v. Rust, Orling & Neale Architects, Inc. (1988), 236 Va. 419, 425, 374 S.E.2d 55. "'Tort law is not designed … to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.'" Floor Craft, 54 Ohio St.3d at 7, 560 N.E.2d 206, quoting Sensenbrenner, 236 Va. at 425, 374 S.E.2d 55.

Id. at 414, 835 N.E.2d at 704.

In accordance with the economic-loss rule, as explained by the Ohio Supreme Court in Corporex, this Court concludes that it must dismiss Plaintiffs'

- 30 -

negligence claim, the Eighth Claim for Relief in their Amended Complaint.  The Court disagrees with Defendant, however, that Plaintiffs' fraud and negligent misrepresentation claims are subject to dismissal under the economic-loss rule.  In Universal Contracting v. Aug, 2006 WL 3015325 (Ohio App. 2006), the Hamilton Court of Appeals acknowledged that "Ohio has recognized one of the exceptions to the economic-loss rule: the tort of negligent misrepresentation as defined in 3 Restatement of the Law 2d, Torts (1965), Section 552."  Id. at 3 (citing Haddon View Invest. Co. v. Coopers & Lybrand, 70 Ohio St.2d 154, 436 N.E.2d 212 (1982)).  In Haddon, the Ohio Supreme Court held that an accountant could be held liable for such claims, as well as for fraud, to "a limited class whose reliance on the accountant's representation is specifically foreseen."  Id., 436 N.E.2d at 213 (syllabus).  Therein, the Ohio Supreme Court concluded that limited partners of a limited partnership, a client of the accountant, came within the limited class.  Herein, the seller of goods should specifically foresee that the purchasers of those goods, to whom the manufacturer's representations about the quality of the goods are directed, will rely upon those representations.  Therefore, the Court cannot agree with the Defendant that the economic-loss rule prevents the Plaintiffs from bringing their fraud and negligent misrepresentation claims.[22]

Defendant also argues that the Court must dismiss the Plaintiffs' tort claims, because they purchased their motorcycles in accordance with contracts, which, under Ohio law, precludes tort claims based upon the same conduct and damages.

---

[22]For reasons which follow, this Court concludes that the Plaintiffs' unjust enrichment claim must be dismissed, because a contract between the parties covers the same matters as the claim for unjust enrichment.  Therefore, it is not necessary to consider whether the economic-loss rule prevents the Plaintiffs from pursuing that claim.

With respect to the Plaintiffs' claim for unjust enrichment, this Court agrees. Ohio courts have long recognized that "the remedy of unjust enrichment is not available where there is an express contract covering the same subject." Chuparkoff v. Farmers Insurance Co. of Columbus, 2006 WL 1751219 (Ohio App. 2006) (internal quotation marks and citation omitted). See also, Ullmann v. May, 147 Ohio St. 468, 72 N.E.2d 63 (1947). With respect to the claims of fraud and negligent misrepresentation, the Defendant relies upon Battista v. Lebanon Trotting Ass'n, 538 F.2d 111, 117 (6th Cir. 1976), wherein the Sixth Circuit held that, under Ohio law, one could not transform a breach of contract action into a tort, by alleging that the contract was maliciously or willfully breached. Therein, the Sixth Circuit did not suggest that a plaintiff could not maintain a claim for fraud and/or negligent misrepresentation merely because the parties have a contract. Indeed, neither of those terms was utilized by the Sixth Circuit in Battista.

In Battista, the Sixth Circuit also noted that "[a] tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." 538 F.2d at 117. Under Ohio law, there is a duty to avoid making misrepresentations which exists, regardless of the existence of a contractual relationship. That can be seen by examining the elements of the tort of fraud under Ohio law, which are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Mussivand v. David, 45

Ohio St.3d 314, 322, 544 N.E.2d 265, 273 (1989). Although fraudulent

concealment requires an independent duty to disclose, there is no such requirement

for misrepresentations. See also, Delman v. City of Cleveland Heights, 41 Ohio

St.3d 1, 4, 534 N.E.2d 835, 838 (1989) (indicating that a claim of negligent

misrepresentation includes element that defendant, in the course of his business,

supply "false information for the guidance of others in their business transactions,"

without indicating that there must be an independent duty to avoid giving false

information).

Defendant also argues that Ohio law does not permit a tort claim, separate

from a claim for breach of contract, to be maintained, unless the plaintiff alleges

damages that are distinct from the damages alleged in the breach of contract

claim. In support of that argument, Yamaha relies upon Prater v. Three-C Body

Shop, Inc., 2002 Ohio App. Lexis 1485 (Ohio App. 2002). Therein, the plaintiff

brought a number of claims against the defendant, arising out of the lengthy and

expensive repairs the latter had performed on the former's automobile. The trial

court granted summary judgment to defendant on some claims and resolved other

claims in defendant's favor after a trial. On appeal, the Franklin County Court of

Appeals affirmed the grant of summary judgment on plaintiff's fraud claim, which

was predicated upon the assertion that the defendant had required plaintiff to pay

more than the agreed upon contract price. The trial court's grant of summary

judgment on this claim was predicated on the conclusion that the evidence did not

raise a genuine issue of material fact as to whether the plaintiff had been required

to overpay. Adopting a different rationale, the Franklin County Court of Appeals

also concluded that plaintiff's fraud claim was not actionable, because it was no

different than the breach of contract claim, writing:

> A breach of contract claim does not create a tort claim, and a tort claim based upon the same actions as those upon which a breach of contract claim is based exists only if the breaching party also breaches a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed.  <u>Textron Fin.Corp. v. Nationwide Mut. Ins. Co.</u> (1996), 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, discretionary appeal not allowed in (1996), 78 Ohio St.3d 1425, 676 N.E.2d 531. Further, there must be damages attributable to the wrongful acts which are in addition to those attributable to the breach of contract.  <u>Id.</u>

<u>Id.</u> at *11.  <u>Textron Fin.Corp. v. Nationwide Mut. Ins. Co.</u>, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, 1270 (1996), in turn, was based upon the Sixth Circuit's decision in <u>Battista</u>.  Accordingly, based upon the above reasoning, this Court is not persuaded by <u>Prater</u> that it must dismiss Plaintiffs' fraud and negligent misrepresentation claims.

Defendant also argues that this Court must dismiss the Plaintiffs' fraud claim, because they have failed to plead it with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) provides that, "[i]n all averments of fraud …, the circumstances constituting fraud … shall be stated with particularity."  The Sixth Circuit has repeatedly held that "Rule 9(b) requires plaintiffs at a minimum 'to allege the time, place and contents of the misrepresentation(s) upon which he relied.'"  <u>American Town Center v. Hall 83 Associates</u>, 912 F.2d 104, 109 (6th Cir. 1990) (quoting <u>Bender v. Southland Corporation</u>, 749 F.2d 1205, 1216 (6th Cir. 1984)).  Herein, the Plaintiffs have alleged that Yamaha misrepresented that the motorcycles it manufactured were free from defects.  Plaintiffs' Amended Complaint at ¶ 157.  Thus, the Plaintiffs have met the third requirement of pleading a claim of fraud with particularity.  The Plaintiffs most recent pleading does not, however, contain allegations concerning the time and place of the alleged misrepresentations upon which each of them

relied.  Accordingly, this Court concludes that the Plaintiffs have failed to allege their claim of fraud, the Ninth Claim for Relief in their Amended Complaint, with particularity, as required by Rule 9(b).  Rather than dismissing that claim with prejudice, the Court will afford them the opportunity of setting forth the requisite allegations in the second amended complaint it has, above, directed the Plaintiffs to file.  The Plaintiffs need not allege when and where each member of the putative class relied upon the alleged misrepresentation.  They must, however, allege with particularity when and where the alleged misrepresentation, upon which each relied, was made to each of the three named Plaintiffs.  As is indicated above, such an amended pleading must be filed within 20 days from date.  In the absence of the filing of such an amended pleading, the Court will dismiss the Plaintiffs' fraud claim with prejudice.

Based upon the foregoing, this Court agrees with the Defendant that Plaintiff's claims of unjust enrichment and negligence, the Seventh and Eighth Claims for Relief in their Amended Complaint, must be dismissed, while rejecting the Defendant's arguments in support of dismissal of their negligent misrepresentation claim (the Tenth Claim for Relief).  In addition, the Court has concluded that the Plaintiffs did not plead their fraud claim with particularity and has given them leave to amend to cure the deficiencies.

## VI.  Declaratory Judgment (Eleventh Claim for Relief in Plaintiffs' Amended Complaint)

With this claim, the Plaintiffs seek a declaratory judgment, declaring that their contracts are void for fraud, want of consideration and/or unconscionability. Plaintiffs' Amended Complaint at ¶ 174.  That request for declaratory relief is

predicated upon the allegation that the Defendant represented that it was selling non-defective motorcycles, which turned out to be defective. Id. at ¶ 171. The Defendant has moved to dismiss this claim, arguing, inter alia, that a justiciable controversy does not exist because it has performed the repair work and the Plaintiffs have not suffered a cognizable injury. Since there is no evidence that the Defendant has performed the repair work and the Court has concluded above that the Plaintiffs have alleged that they have suffered a cognizable injury, this Court rejects the Defendant's assertion that Plaintiffs' request for declaratory relief does not present a justiciable controversy. Nevertheless, this Court will decline to entertain Plaintiffs' request for such relief.

This Court is authorized to grant a declaratory judgment in accordance with 28 U.S.C. § 2201(a), which provides that a court " may declare the rights and other legal relations of any interested party seeking such declaration …." (Emphasis added). In Travelers Indemnity Co. v. Bowling Green Professional Associates, PLC, 495 F.3d 266 (6th Cir. 2007), the court explained the meaning of the quoted portion from § 2201(a):

> This language affords the district court "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n, 481 F.3d 414, 421 (6th Cir. 2007) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995)).

Id. at 271. Therein, the Sixth Circuit also set forth the factors which must be applied in determining whether to exercise such discretion:

> In applying this general standard, we have long considered the five factors enumerated in Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984):
> (1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective. Id.

Id.

Herein, a consideration of those factors causes this Court to conclude that it should decline to entertain the Plaintiffs' Eleventh Claim for Relief.  The true controversy herein is whether the Plaintiffs and the members of the class they seek to represent will recover some compensation for the economic harm they have suffered as a result of the defective transmissions in the motorcycles they have purchased.  The claim for declaratory relief will not bring the resolution of that controversy to closure, or even speed it on its way.  Moreover, the requested declaratory relief would not serve a useful purpose in clarifying the parties' legal relations, given that the Plaintiffs are seeking to recover compensatory damages for past harm, rather than seeking to clarify their legal relationship with the Defendant, to govern future interactions.[23]  In addition, a claim for damages for breach of contract, predicated upon the theories which underlie their request for a declaratory judgment would be a more effective remedy than a declaratory judgment itself.

---

[23]Since this is not an instance where actions are pending in both federal and state courts, the third and fourth factors are inapplicable.

Accordingly, this Court declines to entertain the Plaintiffs' request for a declaratory judgment and, as a consequence, dismisses the Eleventh Claim for Relief in their Amended Complaint.

Based upon the foregoing, the Court sustains in part and overrules in part the Defendant's Motion to Dismiss (Doc. #41). The motion is sustained, as it relates to the Plaintiffs' claims of unjust enrichment, negligence and for declaratory relief, the Seventh, Eighth and Eleventh Claims for Relief in Plaintiffs' Amended Complaint. It is also sustained as it relates to their fraud claim, the Ninth Claim for Relief. The Court has, however, given Plaintiffs leave to file a second amended complaint, setting forth when and where the alleged misrepresentation, upon which each of the named Plaintiffs relied, was made to each of them.[24]

Counsel will note that the Court has scheduled a telephone conference call on Friday, April 18, 2008, at 8:30 a.m., for the purpose establishing a trial date and other dates leading to the conclusion of this litigation. In anticipation of the conference call, the parties must submit, within 20 days from date, a jointly prepared case management plan, in the form available on this Court's website, identifying the areas in which there is agreement concerning the schedule of this lawsuit, including the filing of a motion for class certification, a briefing schedule and a suggested date for an oral (and, perhaps, evidentiary) hearing upon same. To the extent that they are not able to agree, the Plaintiffs and the Defendant should each file, within 20 days of date, their own suggested schedule for the

---

[24]This Court has also required that the Plaintiffs file a second amended complaint, expressly alleging that one or more or all of the named Plaintiffs purchased his motorcycle in Ohio.

areas of disagreement, together with a <u>brief</u> description why their suggested schedule is better.  The Court will resolve the areas of disagreement during the conference call.[25]

March 17, 2008

/s/ Walter Herbert Rice

WALTER HERBERT RICE, JUDGE<br>UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.

---

[25]The Plaintiffs' Motion for Discovery regarding Class Certification (Doc. #50) is also pending.  The Court overrules that motion, since it believes that the commencement of such discovery should await the approval of a case management plan.