IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN CANCINO, et al., :

Plaintiffs, :

vs. : Case No. 3:04cv274

YAMAHA MOTOR CORP., U.S.A., : JUDGE WALTER HERBERT RICE

Defendant. :

---

DECISION AND ENTRY OVERRULING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION (DOC. #109); CONFERENCE CALL SET

---

This putative class action arises out of a recall notice that Defendant Yamaha Motor Corporation, U.S.A. ("Defendant" or "Yamaha"), sent to purchasers of certain motorcycles it had manufactured. Plaintiffs allege that Defendant indicated therein that those motorcycles were seriously defective and that they could not be operated without risk of serious injury or death.[1] Plaintiffs brought this action in the Montgomery County Common Pleas Court, from whence the Defendant has removed it. In the first three numbered paragraphs of their Second

---

[1]When this litigation was initiated, there were three named Plaintiffs. However, one of the three, Anthony Jewett, has withdrawn as a named Plaintiff (see Doc. #74), and his claims against Defendant have been dismissed, without prejudice (Doc. #76). As a consequence, Steven Cancino and Kevin Hamilton remain as the named Plaintiffs.

Amended Complaint, Plaintiffs set forth the basic factual underpinnings of this litigation:

> 1. This is a class-action lawsuit, in which Plaintiffs seek to recover compensatory and statutory relief resultant from Yamaha's sale of defectively manufactured motorcycles. Each Plaintiff purchased a Yamaha motorcycle in the State of Ohio. Yamaha issued a recall notice that advised Plaintiffs that operation of the defective motorcycles could result in serious injury or death.
>
> 2. Yamaha represented to Plaintiffs at the time of sale that they were buying quality vehicles that would provide a safe and comfortable means of transportation; Yamaha actually sold Plaintiffs motorcycles that they admit are seriously defective and cannot be operated as they pose the risk of serious injury or death.
>
> 3. Although Yamaha has represented it will repair the defects, the invasive and substantial repair work will significantly compromise the value of the motorcycle. Further, Plaintiffs have incurred, inter alia: financing fees, insurance premiums, state motor-vehicle licensure fees, taxes, storage costs, diminution of value and loss of use on [sic] these defective motorcycles. Further still, Plaintiffs are saddled with motorcycles they cannot operate. Additionally, Yamaha has burdened Plaintiffs with the substantial costs of bringing the instant action to enforce their rights.

Plaintiffs' Second Amended Complaint (Doc. #62) at ¶¶ 1-3.

In that pleading, Plaintiffs set forth nine claims for relief under the law of Ohio, to wit: 1) breach of implied warranty of merchantability (First Claim for Relief); 2) breach of express warranty (Second Claim for Relief); 3) breach of contract (Third Claim for Relief); 4) breach of express warranty by affirmation, promise or description (Fourth Claim for Relief); 5) a claim under the Ohio Consumer Sales Practices Act ("OCSPA"), § 1345.01, et seq., of the Ohio Revised Code (Fifth Claim for Relief); 6) a claim under the Ohio Deceptive Trade Practices Act ("ODTPA"), § 4165.01, et seq., of the Ohio Revised Code (Sixth Claim for Relief); 7) fraud (Seventh Claim for Relief); 8) negligent misrepresentation (Eighth

Claim for Relief); and 9) a claim for violations of Ohio's Lemon Law, §§ 1345.71, et seq., of the Ohio Revised Code (Ninth Claim for Relief).

This litigation is now before the Court on the Plaintiffs' Renewed Motion for Class Certification (Doc. #109). With that motion, the Plaintiffs request that the Court certify the following class:

> All Ohio residents who owned a Yamaha motorcycle model year 2001 XV16 Road Star, Midnight Star, or Road Star Silverado, or 2002 or 2003 XV16 Road Star, Road Star Limited Edition, Midnight Star, or Road Star Silverado motorcycle, excluding the defendant, any entity that has a controlling interest in defendant along with defendant's employees, officers, directors, legal representatives and all of their respective heirs, successors, and assignees and any entity alleging a personal injury claim against defendant arising from the facts of this case.

Doc. #109 at 1. The Plaintiffs also seek to have the Court certify the following subclass:

> All Ohio residents who owned a Yamaha motorcycle model year 2001 XV16 Road Star, Midnight Star, or Road Star Silverado, or 2002 or 2003 XV16 Road Star, Road Star Limited Edition, Midnight Star, or Road Star Silverado, excluding the defendant, any entity that has a controlling interest in defendant along with defendant's employees, officers, directors, legal representatives and all of their respective heirs, successors, and assignees and any entity alleging a personal injury claim against defendant arising from the facts of this case, and whose motorcycle was out of service for a cumulative total of 30 days or more within the first year or 18,000 miles of ownership by reason of repair of the transmission defect identified by Defendant.

Id. In addition, the Plaintiffs seek certification on only the following claims:

> (i) Breach of Implied Warranty of Merchantability; (ii) Breach of Express Written Warranty; (iii) Breach of Contract; (iv) Breach of Express Warranty by Affirmation, Promise, or Description; (v) violations of Ohio's Consumer Sales Practices Act; and (vi) violations of Ohio's Deceptive Trade Practices Act.

Id. at 6. The Plaintiffs also seek certification of their Ninth Claim for Relief, a claim under Ohio's Lemon Law. Id. at 19. The Plaintiffs have not requested class certification on their claims of fraud and negligent misrepresentation. Id. at 5 n.26. The Defendant has opposed the Plaintiffs' motion.[2] The Court begins its analysis of Plaintiffs' request for certification by reviewing the standards which must be applied whenever a court rules upon a request to certify an action as a class action.

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"];
>
> (2) there are questions of law or fact common to the class ["commonality"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:

---

[2]In response to Plaintiff's Renewed Motion for Class Certification (Doc. #109), the Defendant has relied upon its memorandum (Doc. #94), opposing Plaintiffs' previous request for class certification. See Doc. #110. Therein, the Defendant has also requested leave to file the summary judgment motions which this Court previously denied. For the reasons set forth in its Decision of September 30, 2009 (Doc. #107), this Court denied Defendant's request for such leave.

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

As a means of analysis, the Court will initially determine whether the Plaintiffs have established the four requirements of Rule 23(a), before turning to the question of whether they satisfied one of the three conditions set forth in Rule 23(b).

The Sixth Circuit has summarized the nature of a district court's injury:

The Supreme Court has required district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981); Cross v. National Trust Life Ins. Co., 553 F.2d 1026, 1029 (6th Cir. 1977) ("district court has broad discretion in determining whether a particular case may proceed as a class action so long as it applies the criteria of Rule 23 correctly").

In re American Medical Systems, Inc., 75 F.3d 1069, 1078-79 (6th Cir. 1996). Accord Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988); Kentucky Educators Public Affairs Council v. Kentucky Registry of Election Finance, 677 F.2d 1125, 1135 (6th Cir. 1982). A lawsuit cannot be certified as a class action, unless the four prerequisites of Rule 23(a) and one of the conditions of Rule 23(b) have been met. Sparuge v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998) (en banc). The party seeking to certify the action as a class action has the burden of establishing the prerequisites of same.[3] Alkire v. Irving, 330 F.3d 802, 820 (6th Cir. 2003); Senter v. General Motors Corp., 532 F.2d 511 (6th Cir.), cert. denied, 429 U.S. 870 (1976). With those general principles in mind, the Court turns to the question whether Plaintiffs have established the four prerequisites of Rule 23(a), i.e., numerosity, commonality, typicality and adequacy of representation. However, before engaging in that analysis, this Court will address two issues raised by the parties in their memoranda.

First, Defendant contends that it is proper for this Court to consider the merits of Plaintiffs' claims when deciding whether to certify this litigation as a class action. See Doc. #94 at 7-8. In support of that proposition, the Defendant has cited In re New Motor Canadian Export Antitrust Litigation, 522 F.3d 6 (1st Cir. 2008), wherein the court wrote that "[i]t is a settled question that some inquiry into the merits at the class certification stage is not only permissible but

---

[3]This Court has previously held that the party seeking certification bears the burden of establishing its propriety by the preponderance of the evidence. Shepherd v. Babcock & Wilcox of Ohio, 2000 WL 987830 (S.D.Ohio 2000) at *1 n. 5. In Ilhardt v. A.O. Smith Corp., 168 F.R.D. 613, 617 (S.D.Ohio 1996), Judge Weber reached the same conclusion. Accord In re Safety-Kleen Corp. Bondholders Litigation, 2004 WL 3115870 (D.S.C. 2004) at *2.

appropriate to the extent that the merits overlap the Rule 23 criteria." Id. at 24. The Sixth Circuit, in contrast, has taken a different approach. In Beattie v. Century Tel, Inc., 511 F.3d 554 (6th Cir. 2007), cert. denied ____ U.S. ____ (2008), the Sixth Circuit wrote:

> Lastly, Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); Daffin v. Ford Motor Co., 458 F.3d 549, 553 (6th Cir. 2006).

Id. at 560. This Court will (as it must) follow Sixth Circuit authority when deciding whether to certify this litigation as a class action. Therefore, it will not consider the merits of Plaintiffs' claims when ruling on the instant motion for certification.

Second, the Defendant argues that this Court cannot certify this litigation, because the Plaintiffs' define the proposed class and sub-class in a vague manner. See Doc. #94 at 9-10. In Daffin v. Ford Motor Co., 458 F.3d 549 (6th Cir. 2006), the Sixth Circuit approved the certification of a class action arising out of the alleged sticking of accelerators on Mercury Voyagers. The District Court had defined the class in the following manner:

> all Ohio residents who lease or own a model year 1999 or 2000 Villager that was bought or leased during the warranty period, excluding the defendant, any entity that has a controlling interest in the defendant along with defendant's employees, officers, directors, legal representatives and all of their respective heirs, successors, and assignees and any entity alleging a personal injury claim against Ford arising from the facts of this case.

Id. at 551. Given that the Sixth Circuit has approved an analogous definition of a class, this Court rejects the Defendant's assertion that it cannot certify this

litigation, because the Plaintiffs have defined the proposed class and sub-class in an overly vague manner.

I. Prerequisites of Rule 23(a)

The Court will address the four prerequisites of Rule 23(a), numerosity, commonality, typicality and adequacy of representation, in the order in which they appear in that provision of the Rules of Civil Procedure.

A. Numerosity

To meet the numerosity prerequisite, the putative class must be so numerous "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Sixth Circuit has discussed the numerosity requirement:

> There is no strict numerical test for determining impracticability of joinder. Senter, 532 F.2d at 523 n.24 (and citations therein). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980). When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone. 1 [Herbert B. Newberg & Alba Conte, Newberg on Class Actions], § 3.05, at 3-26.

In re American Medical Systems, 75 F.3d at 1079. Accord Golden v. City of Columbus, 404 F.3d 950, 965 (6th Cir.2005).

Herein, Yamaha's warranty records reveal that of the 900 motorcycles it had sold to its authorized dealers in Ohio, 726 of those recalled were registered to residents of Ohio. Thus, there are a minimum of 726 members in the class proposed by Plaintiffs. As to the proposed sub-class, there are a minimum of 318 members, given that 318 Ohio residents bought recalled motorcycles within the

year preceding the January, 2004, recall notice. Moreover, the Defendant has failed to challenge Plaintiffs' assertion that they have met the numerosity requirement. Although the minimum number of class members in the class and sub-class is not in the 1000's, this Court, in the absence of a principled argument from Defendant to the contrary, finds that the Plaintiffs have met their burden of showing that the proposed class and sub-class are so numerous that joinder would be impracticable.

B. Commonality

In Sprague, the Sixth Circuit reviewed the commonality requirement, set forth in Rule 23(a)(2):

> The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class. American Med. Sys., 75 F.3d at 1080. It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

133 F.3d at 397.

Herein, Plaintiffs have identified in their Second Amended Complaint the issues of law and fact which are common to all members of the putative class:

> 42. Among the questions of law and fact common to the class are:
> a. Whether Yamaha breached written warranties (sic) issued to each Plaintiff that covers all nonconformities and/or defects in material and/or workmanship, and indicate that Yamaha will refund, repair, replace, and/or take all remedial action, free of charge to Plaintiffs, in the event that the motorcycles fail to meet the specifications set forth in the warranties.
> b. Whether Yamaha breached implied warranties issued to each Plaintiff that the motorcycles would be free of defects and

nonconformities in both material and workmanship, and thereby fit for the ordinary purpose for which the motorcycles were intended.

c. Whether Yamaha breached express warranties issued to each Plaintiff that the motorcycles shall conform to the affirmation or promise that the motorcycles were fit to be used as, inter alia, a means of transportation.

d. Whether Yamaha breached express warranties issued to each Plaintiff that the motorcycles shall conform to the description that the motorcycles are fit to be used as, inter alia, a means of transportation.

e. Whether the defects and nonconformities in the motorcycles render them un-merchantable, unsafe, and thereby not fit for the ordinary and essential purpose for which the motorcycles were intended and represented by Yamaha.

f. Whether Yamaha violated the Ohio Consumers Sales Practices Act by, inter alia: representing that the motorcycles functioned properly and were free from defects, when in actuality, the motorcycles had defects of such magnitude that to use them in the manner they were represented to be used posed potentially life-threatening risks; and by selling such unfit motorcycles to Plaintiffs with the knowledge of such defects and risks.

g. Whether Yamaha violated the Ohio Deceptive Trade Practices Act by representing that the motorcycles sold to Plaintiffs were of a particular standard, quality, and/or grade that they were not; and whether Yamaha advertised the motorcycles as being suitable for ordinary use knowing that they were, in fact, defective and not suitable for ordinary use.

h. Whether Yamaha breached warranties of merchantability and fitness with each Plaintiff by providing motorcycles that are un-merchantable, unsafe, and not fit for the ordinary and essential purpose for which they were intended and represented by Yamaha.

i. Whether, by delivering defective motorcycles to Plaintiffs, Yamaha breached its obligations under the purchase contracts with Plaintiffs.

j. Whether Yamaha's sale of the defective motorcycles was fraudulent.

k. Whether Yamaha's sale of the defective motorcycles was based upon negligent misrepresentations.

Doc. #62 at ¶ 42. In their latest motion seeking class certification, the Plaintiffs

have identified the following common issues of law and fact:

(1) whether Yamaha knew of the defect and its potentially dangerous nature;

(2) whether Yamaha misrepresented the characteristics of the defective

> motorcycles; (3) whether Yamaha made promises regarding the defective motorcycles; (4) whether the defective motorcycles conformed to Yamaha's express warranties; (5) whether the defective motorcycles were merchantable; (6) whether the defective motorcycles have the value represented by Yamaha; (7) whether Yamaha's concealment of the transmission defect constituted fraud or misrepresentation; and (8) whether Plaintiffs are entitled to compensatory damages.

Doc. #109 at 11-12. Given that the Plaintiffs have most recently relied upon the list of asserted common issues of law and fact set forth in their motion, while not expressly relying upon the common issues alleged in their Second Amended Complaint, this Court will determine the question of commonality by reference only to the former.

As an initial matter, the Court need not consider the second and seventh common issues listed in Plaintiffs' Renewed Motion for Class Certification (Doc. #109), since they pertain to Plaintiffs' claims of fraud and negligent misrepresentation, which they have not requested the Court to certify. In addition, the Court cannot conclude that the eighth issue listed by Plaintiffs raises a common issue of law or fact, given that the question of damages will be dependent upon individual factors for each member of the class. For instance, each member of the putative class would be required to prove that he or she suffered an injury, in order to be entitled to recover damages.

With respect to the other issues identified by the Plaintiffs, this Court concludes that those issues meet the commonality requirement. Resolution of issues such as whether Yamaha knew of the defect in the motorcycles that were sold to the Plaintiffs and the members of the putative class, and whether the defective motorcycles conformed to Yamaha's express warranties and were merchantable will materially advance the resolution of this litigation.

C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The Sixth Circuit has elaborated on the typicality requirement:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.
>
> 1 Newberg, supra, § 3-13, at 3-76 (footnote omitted). See also General Tel. Co. v. EEOC, 446 U.S. at 330 ("typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims"); Senter, 532 F.2d at 525 n. 31 ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law").

In Re American Medical Systems, 75 F.3d at 1082. Accord Sprague, 133 F.3d at 399.

Herein, the Plaintiffs' claims are typical, given that a sufficient relationship exists between the injuries allegedly suffered by the Plaintiffs and the Defendant's conduct that affects the class. The Plaintiffs alleged injuries flow from the defective motorcycles sold to them and the members of the putative class. Stated somewhat differently, the Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of the members of the putative class, i.e., selling motorcycles with defective transmissions.

Nevertheless, Defendants argue that the claims of the named Plaintiffs are not typical, because they have no incentive to pursue their claims, given that they cannot prevail on the first four claims for relief set forth in Plaintiff's Second Amended Complaint.[4] The Court rejects that argument, since it improper to "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Daffin, 458 F.3d at 553 (quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974)).

Accordingly, this Court concludes that the Plaintiffs have established the typicality requirement.

D. Adequacy of Representation

The adequacy of representation prerequisite arises from the requirement in Rule 23(a)(4) that "the representative parties will fairly and adequately protect the interests of the class." In Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-27 (1997), the Supreme Court discussed the adequacy of representation requirement.

---

[4]This argument is set forth in the Defendant's Motion for Partial Summary Judgment on Counts One through Four in Plaintiffs' Second Amended Complaint (Doc. #86). This Court previously overruled that motion, without prejudice to renewal, after this Court had resolved the question of class certification. See Doc. #107. In addition, the Defendant frames this argument as one that the Plaintiffs lack standing to pursue their claims. See Doc. #94 at 13. If the Defendant's argument is that the Plaintiffs lack Article III standing to pursue breach of warranty and contract claims, this Court rejects same. The Defendant does not assert that Plaintiffs could not establish the three requirements for standing, to wit: injury in fact, causation, and redressability. See e.g., Midwest Media Propert LLC v. Symmes Township, Ohio, 503 F.3d 456, 461 (6th Cir. 2006) (listing the three requirements of standing). Moreover, it is settled law that a plaintiff does not lack standing merely because he will not prevail on the merits of his claim. See e.g., Pitt County v. Hotels.com, L.P., 553 F.3d 308, 312 (4th Cir. 2008) (noting that courts must not resolve the merits of a plaintiff's claim under the guise of determining whether it has standing).

Therein, the Court noted that the "adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent" and that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 625-26 (internal quotation marks and citations omitted). The Amchem Court also wrote that "[t]he adequacy heading also factors in competency and conflicts of class counsel." Id. at 626 n.20. The Sixth Circuit has "articulated two criteria for determining adequacy of representation: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." In re American Medical Systems, 75 F.3d at 1083 (internal quotation marks and citation omitted).

In Amchem, the District Court had certified a nationwide class for settlement purposes only, which included all individuals who had or would suffer personal injuries as a result of exposure to asbestos. The Supreme Court concluded that the case had been erroneously certified, in part, because a conflict existed between those members of the class already suffering an asbestos related disease as a result of exposure to asbestos and the "exposure-only plaintiffs", i.e., those who, although exposed to asbestos, were not then suffering any such diseases. Herein, in contrast, there is no such conflict between the named Plaintiffs and the members of the putative class, and one of the Plaintiffs is a member of the putative sub-class. Indeed, the Plaintiffs are part of the class they seek to represent and possess the same interests and suffered the same injuries as members of the putative class. Plaintiffs and the members of the putative class

are all Ohio residents who purchased motorcycles manufactured by the Defendant and are alleged to have suffered injuries as result of those motorcycles being sold to them in a defective condition, necessitating their recall. In addition, this Court finds that counsel representing the Plaintiffs are sufficiently competent to represent the class in this litigation and that they are free from any conflict that would impair such representation.[5]

Accordingly, this Court concludes that the Plaintiffs have established that they "will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4).

E. Conclusion

In Amchem, the Supreme Court noted that the "adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" 521 U.S. at 626, n. 20 (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157, n. 13 (1982)).

---

[5]The Defendant argues that the Plaintiffs are not adequate representatives of the putative class, because they lack standing to assert their own breach of warranty and contract claims. See Doc. #94 at 10. This is the same challenge that the Defendant raised to the typicality requirement. See 12-13, supra. For the same reasons that it rejected the Defendants argument in this regard, as it relates to their assertion that the Plaintiffs' failed to establish typicality, the Court rejects their contention as it relates to the adequacy of representation requirement.

In Falcon, an employment discrimination lawsuit, the District Court certified a class of individuals who had allegedly been discriminated against on the basis of their Mexican heritage in promotions and in hiring. The plaintiff, however, was an employee of the defendant who had only suffered discrimination by being denied promotions. The Supreme Court concluded that the plaintiff's claims lacked commonality with and were not typical of the claims of the class of applicants who had allegedly been discriminated against by the defendant's refusal to hire them, and that he was, accordingly, not an adequate representative of such a class. Consequently, the Supreme Court concluded that the class had been erroneously certified. Id, at 158-160.

Herein, in contrast, the Plaintiffs' claims and those of the members of the putative class all arise out of Yamaha's sale of defective motorcycles which were subsequently recalled, allegedly causing their owners to suffer harm. Therefore, the Plaintiffs do not have the same relationship to the absent members of the class, as did the plaintiff in Falcon. Rather, herein, "the named [P]laintiff's claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem, id. at 626, n. 20.

II. Maintenance as a Class Action under Rule 23(b)

Having concluded that the Plaintiffs have established the four prerequisites of Rule 23(a), this Court must determine whether the Plaintiffs have established that this litigation can be maintained as a class action under one of the subdivisions of Rule 23(b). Herein, since the Plaintiffs rely exclusively on Rule 23(b)(3), this Court need only decide whether this litigation may be maintained as a class action

under that provision in the Federal Rules of Civil Procedure. As is indicated above, Rule 23(b)(3) permits a class action to be maintained, if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As a means of analysis, the Court will discuss the question of predominance, before turning to the issue of superiority.

A. Predominance

In Beattie, the Sixth Circuit discussed the predominance requirement in Rule 23(b)(3):

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." [Amchem], 521 U.S. at 632; see also In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001). To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof.'" In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 136 (quoting Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir.2000) (internal quotation marks omitted)). Further, "the fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" Id. at 138 (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000)). Lastly, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." Id. at 139.

511 F.3d at 564. Applying these standards to the claims asserted by the Plaintiffs herein, this Court concludes that the individual issues raised by the Plaintiffs' claims predominate over the issues that could be resolved on a class-wide basis.

1. First and Third Claims for Relief (Breach of Warranty of Merchantability and Contract)

With their First and Third Claims for Relief, the Plaintiffs set forth, respectively, claims for breach of implied warranty of merchantability and contract. According to Yamaha, its motorcycles are sold to authorized dealers, who, in turn, sell those motorcycles to customers such as the Plaintiffs and the members of the class they seek to represent. In order to prevail on a claim for breach of implied warranty of merchantability or of contract, a plaintiff must establish that he is in privity of contract with the defendant.[6] Curl v. Volkswagen of Am., Inc., 114 Ohio St.3d 266, 871 N.E.2d 1141 (2007) (a claim for breach of implied warranty of merchantability does not exist in the absence of privity of contract); Lawyers Coop. Publishing Co. v. Muething, 65 Ohio St.3d 273, 603 N.E.2d 969 (1992) (same); Barnett–McCurdy v. Hughley, 2008 WL 4358614 at *9 (Ohio App. 2008) ("Lacking any privity of contract with appellant, [defendants] cannot be liable for breach of contract or breach of [express] warranty under Ohio law ...."). Thus, a fundamental, individualized issue will have to be resolved with regard to each member of the class—was that member of the class in privity of contract with Yamaha—before he or she could recover for breach of contract or breach of implied warranty of merchantability.

---

[6]In its Motion for Partial Summary Judgment on Counts One through Four in Plaintiffs' Second Amended Complaint (Doc. #86), Defendant argued that it was entitled to summary judgment on those claims, because privity of contract did not exist between it and either Plaintiff, given that each Plaintiff had testified during his deposition that he had purchased his motorcycle from a dealer and that he had not entered into a contract with the Defendant.

Given that the threshold questions of whether any one or more or all of the members of the putative class were in privity with the Defendant would still have to be resolved on an individualized basis, if this Court were to certify this litigation as a class action, this Court concludes that the individualized issues presented by the First and Third Claims for Relief predominate over the issues which are common to the class as a whole. For instance, the Plaintiffs have not alleged that their breach of contract claim arises out of a standard written contract into which Yamaha entered with everyone purchasing a motorcycle it manufactured. Therefore, it is quite possible that the content of contracts between the members of the class and Defendant will have to be determined individually. Moreover, Plaintiffs' seek to recover damages, inter alia, for loss of use of their motorcycles, for the diminution of the value of the motorcycles as a result of their alleged defects and for consequential and incidental damages such as financing fees, insurance premiums, storage costs and attorney's fees. Each element of those damages will require an individualized calculation. That point can be demonstrated by examining damages for loss of use of a motorcycle. Such damages will be dependent upon the amount of time a particular member of the putative class was without the use of his motorcycle as a result of the recall. Some members may have been fortunate enough to have their recall work performed quickly, while others, such as the Plaintiffs, were unable to use the motorcycles for an extended period of time. In addition, damages caused by the loss of use of the motorcycles will vary according to the use to which each member of the class put his motorcycle. The damages from loss of use would be greater for an individual who used his motorcycle for primary transportation than for a member of the putative

class who used his motorcycle primarily for weekend rides. In addition, the diminished value of the motorcycle owned by a given member of the putative class will depend in part on the condition of his motorcycle at the time of the recall, which can only be resolved on an individualized basis. Of course, the consequential and incidental damages, if any, can be resolved only on an individualized basis.

Balanced against those individualized issues, the Plaintiffs argue that the common and predominate issues are whether a defect existed in motorcycles manufactured and sold by Defendant; whether that defect existed at the time the product left Yamaha; and whether the defect is a direct and proximate cause of loss. See Doc. #109 at 17. It is doubtful that Yamaha could contest the first of those issues, given that it voluntarily recalled the motorcycles purchased by the members of the putative class so that their transmissions could be repaired. The second issue identified by Plaintiffs could be resolved on a class-wide basis. As to the question of whether the defect in the motorcycles was a direct and proximate cause of the loss they suffered, the Court is of the opinion that this issue can be resolved on a class-wide basis, to the extent that resolution of the question of proximate cause requires the factfinder to determine whether the general types of losses suffered by the members of the class were foreseeable. It is possible, however, that resolution of the question of whether the defect was the direct cause of the specific loss suffered by a particular member of the class could require individualized resolution.

Accordingly, this Court concludes that common issues do not predominate as to Plaintiffs' First and Third Claims for Relief.

2. Second and Fourth Claims for Relief (Breach of Express Warranty)

The Plaintiffs have asserted two claims for breach of express warranty against the Defendant, their Second and Fourth Claims for Relief. Ohio courts have indicated that the absence of privity of contract does not necessarily prevent a person from maintaining an action for breach of express warranty. See e.g., Bobb Forest Products, Inc v. Morbark Industries, Inc., 151 Ohio App.3d 63, 82, 783 N.E.2d 560, 574 (2002) (citing Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612 (1958)); Chic Promotion, Inc. v. Middletown Sec. Sys., Inc., 116 Ohio App.3d 363, 368, 688 N.E.2d 278, 282 (1996) (same).[7] Therefore, the question of privity is not a factor to weigh in the calculus of predominance on these two claims. The Court will analyze the issue of predominance regarding these two claims in the order in which they appear in Plaintiffs' Second Amended Complaint (Doc. #62).

---

[7]In Bobb, the plaintiff purchased a large saw used in a sawmill from the defendant's authorized dealer. The saw had numerous problems, which persisted despite efforts by the defendant and the dealer to rectify them. As a result of the problems, the saw failed to cut lumber properly, resulting in the plaintiff suffering financial losses. Thereafter, the plaintiff brought suit against the defendant, alleging that the latter had breached the express warranty that accompanied the saw. Despite the absence of privity of contract between the parties, the court of appeals affirmed the jury's verdict in favor of the plaintiff on its claim of breach of express warranty, noting that the plaintiff's representative had read the defendant's product guide, viewed a number of its videos and spoken with a senior representative of defendant, all before purchasing the saw. In Chic Promotion, the plaintiff purchased a security system from Ademco's authorized dealer. When the system failed to operate properly, the plaintiff brought an action against Ademco and others, asserting a claim of breach of express warranty against Ademco. In affirming the trial court's grant of summary judgment in favor of Ademco, the court of appeals noted that the sales brochure upon which the plaintiff based its claim of breach of express warranty was written in language that was too precatory (i.e., phrased as a request rather than a command) to create an express warranty. 116 Ohio App.3d at 369, 688 N.E.2d at 282.

With their Second Claim for Relief, Plaintiffs allege that Defendant furnished written warranties, under which it warranted that "each new model Yamaha motorcycle will be free from defects in material and workmanship for the period of time stated heroin [sic], subject to certain stated limitations." Doc. #62 at ¶ 96. Plaintiffs also allege that the written warranties induced them into purchasing their motorcycles, that they relied upon the warranties when purchasing same and that Yamaha breached the written warranties Id. at ¶¶ 99 and 101. According to the Plaintiffs, they suffered injuries as a result of the breach, including loss of use of their motorcycles, the diminution of their value and various forms of consequential and incidental damages such as financing fees, insurance premiums, storage fees and attorney's fees. Id. at ¶ 103. They also seek the return of all monies paid for the motorcycles. Id.

The meaning and applicability of this express, written warranty are issues that would be appropriately decided on a class-wide basis. If the Plaintiffs' Second Claim for Relief were predicated solely upon the assertion that the Defendant breached that express, written warranty, the Court might be able to conclude that the common issues predominate, even though the damages that each particular member of the putative class could recover would require an individualized resolution. However, the Plaintiffs' Second Claim for Relief is not so limited. They also allege that they were induced to purchase their motorcycles by the written warranties and that they relied upon same. The issues of inducement and reliance can be resolved only on an individualized basis. Balancing those issues, together with the question of damages, against the meaning and applicability of the written

warranty, this Court concludes that the individual issues predominate over those that could be resolved on a class-wide basis.

With their Fourth Claim for Relief, the Plaintiffs allege that the Defendant breached an express warranty created by affirmation, promise or description. In particular, the Plaintiffs allege that Defendant affirmed or promised that its motorcycles would be fit to be used as a means of transportation and that Yamaha described its motorcycles as being fit to be used as a means of transportation. Doc. #62 at ¶¶ 116 and 119. According to the Plaintiffs, the motorcycles which they purchased were not fit to be used for the affirmed, promised or described use as a means of transportation. Id. at ¶¶ 117 and 120. As a consequence, the Plaintiffs suffered damages for loss of use of the motorcycles and the diminution of their value, as well as various consequential and incidental damages, such as financing fees, insurance premiums, storage costs and attorney's fees. Id. at ¶ 122. They also seek the return of all monies paid for the motorcycles. Id.

The creation of express warranties is governed by § 1302.26 of the Ohio Revised Code, which provides:

> (A) Express warranties by the seller are created as follows:
> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
> (B) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value

> of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

The Plaintiffs have not delineated, in their Second Amended Complaint, the particular affirmation of fact, promise or description Yamaha made that serves as the basis of this claim. In other words, the Plaintiffs have not alleged that a particular brochure published by Yamaha or a particular passage from the owner's manual it furnished contained the affirmation, promise or description. Therefore, it is quite probable that the question of whether Yamaha provided such warranties to one or more or all of the members of the putative class will have to be decided on an individualized basis. Moreover, Plaintiffs have not expressly alleged that the particular affirmation of fact, promise or description upon which this claim is based was in writing, as opposed to being oral. Of course, the issues of whether oral affirmations of fact, promises or descriptions were made to one or more or all members of the putative class and the content of same would have to be resolved on an individualized basis. Coupling the foregoing with the individualized determinations of damages, which would be necessary if the putative class were to prevail on this claim, the Court concludes that individualized issues predominate over issues that could be resolved of class-wide basis.[8]

[8]According to Plaintiffs, the question of whether Yamaha breached the express warranty alleged in their Fourth Claim for Relief, as a result of the delay in performing the repairs necessitated by the recall, can be resolved on a class-wide basis. This Court cannot agree, given that the length of time it took to complete the repair work varied among members of the putative class.

3.  Fifth Claim for Relief the Ohio Consumer Sales Practices Act ("OCSPA") and Sixth Claim for Relief the Ohio Deceptive Trade Practices Act ("ODTPA")

Plaintiffs Fifth and Sixth Claims for Relief share common allegations and will be discussed together.  With their Fifth Claim for Relief, Plaintiffs allege that the Defendant violated §§ 1345.02(B) and 1345.03 of the Ohio Revised Code. Section 1345.02(A) makes it illegal to engage in an unfair or deceptive act in connection with a consumer transaction, while Section 1345.02(B) defines such acts to include representing "(1) [t]hat the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have" and "(2) [t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." Plaintiffs contend that the Defendant violated § 1345.02(B)(1) and (2) by representing "that the motorcycles functioned properly and were free from defects, when in actuality, the motorcycles had defects of such magnitude that to use them in the manner they were represented to be used posed potentially life-threatening risks."  Doc. #62 at ¶ 129.  Section 1345.03(A) makes it unlawful to engage in an unconscionable act in connection with a consumer transaction.  Examples of such acts are set forth in § 1345.03(B), including:

> (2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;
>
> (3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;
>
> *               *               *

(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;

(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment ....

Ohio Rev Code § 1345.03(B)(2), (3), (5) and (6). Plaintiffs contend that the Defendant violated § 1345.03 in the following manner:

Based upon information and belief, Yamaha knew at the time that the consumer transaction was entered into that the price of the motorcycles was in excess of the price at which similar property could be obtained because the motorcycles were defective. As such: Plaintiffs could not receive a substantial benefit from the subject of the consumer transaction; Yamaha knew that the consumer transaction was substantially one-sided in its favor; and Yamaha knowingly made a misleading statement of opinion on which Plaintiffs relied to their detriment.

Doc. #62 at ¶ 133. Plaintiffs seek to recover damages for the loss of use of their motorcycles and their diminished value, as well as consequential and incidental damages for items such as financing fees, insurance premiums, storage costs and attorney's fees. Id. at ¶ 136. They also seek the return of all monies paid for the motorcycles. Id.

With their Sixth Claim for Relief, the Plaintiffs allege that, while claiming that it did not have sufficient parts to repair the recalled motorcycles, the Defendant continued to manufacture motorcycles containing those parts. Id. #62 at ¶ 141. Plaintiffs contend that the Defendant's actions in that regard violated § 4165.02(A)(7), (9) and (11) of the Ohio Revised Code, which provides:

(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

*   *   *

> (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
>
> * * *
>
> (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> * * *
>
> (11) Advertises goods or services with intent not to sell them as advertised ....

Plaintiffs seek to recover damages for the loss of use of their motorcycles and their diminished value, as well as consequential and incidental damages for items such as financing fees, insurance premiums, storage costs and attorney's fees. Doc. #62 at ¶ 144. They also seek the return of all monies paid for the motorcycles. Id.

This Court is of the opinion that the issues raised by these claims require an individualized resolution and that these individualized claims predominate over those which can be resolved on a class-wide basis. For instance, resolution of Plaintiffs' theory under § 1345.03 will require consideration of the purchase price each member of the putative class paid for his motorcycle and its value in its defective condition. In addition, whether a particular member of the putative class relied on Defendant's misleading statement of opinion to his detriment must be resolved on an individualized basis. Finally, the statutory provision upon which the Plaintiffs base their claim under the ODTPA defines certain types of representations and advertisements as deceptive. In order for any member of the putative class to recover under Plaintiffs' theory, he will be required to prove that the representation or advertisement caused him to purchase a motorcycle, known by the Defendant to be defective. Such a determination will obviously have to be made individually for

each class member. Moreover, the theory upon which the Plaintiffs base their claim under the ODTPA, that the Defendant used too many of the parts, which could have been used to repair the recalled motorcycles, to manufacture new motorcycles and, thus, failed to ensure that the motorcycles were repaired on a timely basis, will have to be resolved on an individualized basis. Lindsey Myers ("Myers"), an employee of Defendant, testified during her deposition that the shipment of replacement parts to a particular dealer depended upon a number of factors, such as the number of motorcycles the dealer had sold, the size of its service department and the dealer's ability to schedule and to perform the recall work in conjunction with its other repair work. Of course, the amount of damages each member of the putative class can recover will have to be determined individually.

4. Ninth Claim for Relief (Ohio's Lemon Law)

The Plaintiffs bring their Ninth Claim for Relief on behalf of the proposed subclass, alone. The Plaintiffs allege that the motorcycles manufactured by the Defendant, purchased by them, were nonconforming, as that term is defined by the statute.[9] Doc. #62 at 170. Although they do not specifically so allege, it is apparent that the alleged nonconformity upon which this claim is based is the defective condition of the transmissions of those motorcycles. According to the Plaintiffs, that nonconformity violated Ohio's Lemon Law, because the motorcycles

---

[9]"Nonconforming" is defined in the Lemon Law as "any defect or condition that substantially impairs the use, value, or safety of a motor vehicle to the consumer and does not conform to the express warranty of the manufacturer or distributor." Ohio Rev. Code § 1345.71(E).

were out of service by reason of repair for more than 30 days. Id. at ¶ 173. On this claim, Plaintiffs seek rescission and consequential and incidental damages such as financing fees, insurance premiums, storage costs and attorney's fees. Id. at ¶ 174. The Plaintiffs also seek the return of all monies paid for the motorcycles. Id.

Ohio's Lemon Law provides a remedy for those who purchase new motor vehicles that are nonconforming in the first year or 18,000 miles of ownership, whichever occurs first, and which the manufacturer is unable to remedy in a reasonable number of repair attempts. Although the Plaintiffs have not specifically so alleged, it is apparent that their claim under Ohio's Lemon Law is predicated upon the theory that their motorcycles were out of service by reason of repair, because it took more than 30 days to repair them after the recall notice had been issued. Section 1345.72 of the Ohio Revised Code provides that, if the manufacturer "is unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of repair attempts," the consumer can rescind the transaction and, at his option, obtain a refund of the purchase price, plus consequential damages, or a replacement motor vehicle. Ohio Rev. Code § 1345.72(B). A reasonable number of repair attempts is presumed to have occurred, if "[t]here have been eight or more attempts to repair any nonconformity" within the first year or 18,000 miles of ownership. Ohio Rev. Code § 1345.73(C).

Based upon the foregoing, this Court concludes that the individual issues predominate over issues common to the subclass as a whole. The Plaintiffs have defined the proposed subclass to include only those "whose motorcycle[s] [were]

out of service for a cumulative total of 30 days or more within the first year or 18,000 miles of ownership by reason of repair of the transmission defect identified by Defendant." Doc. #109 at 1. However, that the class members' motorcycles were out of service for a cumulative period of 30 days during the first year or 18,000 miles of ownership is an element of the claim under Ohio's Lemon Law that each member of the proposed subclass will be required to establish individually. Moreover, each member of that subclass will have to establish, again on an individualized basis, that his motorcycle was recalled within the first year or 18,000 miles of ownership, whichever occurred first. In addition, the members of the subclass will be required to establish their consequential and incidental damages on an individualized basis.

B. Superiority

In Amchem, the Supreme Court explained that the main purpose of a class action under Rule 23(b)(3) is to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." 521 U.S. at 617 (internal quotation marks and citation omitted). This litigation does not appear to fall within that type of lawsuit, given that the Plaintiffs seek damages exceeding the purchase price of the motorcycles and have asserted three statutory claims which provide for an award of attorney's fees. In contrast, in Beattie v. Century Tel, Inc., 511 F.3d 554 (6th Cir. 2007), the Sixth Circuit held that the District Court had not abused its discretion in concluding that the superiority requirement had been met, because the average recovery for each member of the class would be less than $125.00. Id. at 567.

Moreover, one of the factors to consider in the superiority calculus is "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Herein, the large number of individual issues that will have to be resolved, even if they did not predominate, would make a class action unmanageable. Another factor to consider is "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Herein, the Plaintiff's seek, inter alia, the remedy of rescission. Members of the putative class have a great interest in individually controlling the prosecution of a civil action in which their purchase of motorcycles may be rescinded, with the concomitant requirement that they return their motorcycles to the dealer.

Therefore, this Court concludes that Plaintiffs have failed to establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Based upon the foregoing, the Court concludes that the Plaintiffs have failed to establish that this litigation can be maintained as a class action in accordance with Rule 23(b)(3). Accordingly, it overrules the Plaintiffs' Renewed Motion for Class Certification (Doc. #109).

Counsel of record will note that a telephone conference call will be convened by this Court at 4:15 p.m., Thursday, July 1, 2010, to determine further procedures to follow in the resolution of this litigation, including, without limitation, the setting of a trial date and other dates.

June 24, 2010

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.